## Evans, Appellant, v. Kilgore.

*Sheriff's interpleader—Claim by wife—Fraud—Charge to jury.*

On an issue, under a sheriff's interpleader, the goods were claimed by the wife of the execution defendant, under a trust deed from the purchasers at a sheriff's sale thereof under judgments against her husband, one of which was in her favor, the trust being to pay the grantor's claims and apply the balance in support of her family: *Held*:

1. To defeat the claimant it was necessary to show, either that the grantors in the trust deed did not acquire a good title under the sheriff's sale, or that the instrument transferring their title to the claimant was fraudulent, and intended by the grantors to hinder and delay the then existing creditors of the claimant's husband.*

2. The validity of the claimant's judgment being in no way involved in the issue, and an inquiry into its consideration irrelevant, it was error to charge that to succeed it was necessary "for the wife to establish that the judgment was given to her, bona fide, to secure a debt due to her by her husband, being a part of her separate estate."

3. So, an instruction that if the grantors "had no other purpose in view" than the collection of their claims, yet if they permitted their judgments and executions to be used to aid the execution defendant to transfer his property to his wife, with intent thereby to defraud his creditors, the verdict should be against the claimant, was error.

4. Such instruction was misleading. If the grantors, in the sale and purchase of the goods had no other purpose in view than the collection of their own claims, they could not have been inspired by another and fraudulent purpose; and, with such bona fide purpose in view, neither they nor their grantee could be affected by an undisclosed intent of the defendant.

Argued Nov. 4, 1891. Appeal, No. 128, Oct. T., 1891, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., March T., 1888, No. 23, on verdict for defendant. Before Paxson, C. J., Sterrett, Green, Clark, Williams and Mitchell, JJ.

Samuel Kilgore, upon a judgment obtained by him against W. F. Graham on April 15, 1887, for $3,081.63, issued an execution under which a levy was made upon a stock of goods in a hat and fur store in possession of the execution defendant at 425 Wood street, Pittsburgh. The stock of goods levied upon being claimed by Katie A. Graham, wife of W. F. Gra-

* See Collins v. Cronin, 117 Pa. 35.

ham, proceedings on a sheriff's interpleader were instituted. On July 20, 1888, Mrs. Graham died, and in a feigned issue, afterward ordered to try the title to the stock of goods, Rawdon Evans, guardian of Susan W. Graham, the eldest child of W. F. Graham, was made plaintiff, and Samuel Kilgore, defendant.

At the trial, on Jan. 6, 1891, the facts made to appear were in substance as follows:

On July 6, 1885, three judgments were entered against W. F. Graham, then the owner of the hat and fur store at 425 Wood street; one, in favor of W. W. Wilson, in trust for Katie A. Graham, for $661.85; another in favor of H. P. Ford, for $1,082.11; and another in favor of W. W. Wilson, for $592.29. Executions were issued from these judgments, levies made, and a sheriff's sale of the stock of goods of the defendant in the writs was begun on July 13th. The sale continued for several days, the sales amounting to $1,434.62, the entire stock being purchased by Ford and Wilson, execution plaintiffs, except perhaps one hundred dollars worth. Of the proceeds, $379.77 were returned to the Katie A. Graham judgment, $340.76 to the Ford judgment, and $622.74 to the Wilson judgment.

Ford and Wilson paid no money on their purchase of the stock, but left the same in the store, to be held by Mrs. Katie A. Graham in execution of the following "deed of trust:"

"Whereas, W. F. Graham of the city of Pittsburgh, has been unfortunate in trade, is left without means for the support of his family, and is involved financially to an extent such as renders it improbable that he can meet his liabilities; and Whereas, we the subscribers, feeling influenced by motives of friendship, and confiding in his capacity, integrity, industry and economy, are disposed under these circumstances to render him such assistance for the support of his family as we deem proper; we do agree and engage to contribute the following sums, viz.: I, Henry P. Ford, one thousand and twenty-nine sixty-one hundredth dollars, and I, W. W. Wilson, five hundred and sixty dollars, expressly and solely for the purpose of affording relief and support to the family of said W. F. Graham, and in no manner or way for the interest or advantage of said W. F. Graham, except only a maintenance to be allowed him for his services rendered.

" We also agree and direct that the amount of said sums shall be employed in the way and manner specified below, viz.: That after Katie A. Graham, wife of said W. F. Graham, shall by proper document be released from all obligation and responsibility to her husband, or control under his authority, so that she may act independently for herself, we will pay over to her the sums stated, taking her receipt for the same redeemable in six months from and after the date hereof, with lawful interest thereon: Provided she engage to employ her husband, and no other person without our entire consent, as agent, to trade, deal, barter, buy and sell in her name for the above mentioned purposes, and for none other, allowing him only a reasonable support for his services rendered: Provided also, that in case of her death the same trust shall descend to the eldest child of said W. F. Graham, who, if a minor, shall be represented by a guardian to be appointed, and so on in the same way and manner as often as the occurrence of death, or any sufficient cause, shall render the same necessary: Provided furthermore, that in case of the death of W. F. Graham before the aforesaid capital is entirely redeemed as provided for above, said business, be it what it may, shall be continued under the discretion and friendship of the contributors (remaining unsatisfied) for the purposes as before specified.

" Again, when said capital shall have been entirely redeemed and refunded as provided above, the proceeds and stock remaining shall accrue to the benefit and use of the family of said W. F. Graham, he being hereby in such event appointed trustee of the same, for their use as long as he shall live, and for the equitable and fair distribution to his widow and children after his demise.

" It is further hereby agreed and provided that said Katie A. Graham or her successor, shall once in every three months cause to be furnished a true and mercantile report of the state of said trust, in order that the contributors may be well informed whether their wishes are gratified by the above objects being realized and by a good prospect of success in future, or whether on the contrary from any cause whatever, the state of the case shall indicate a losing concern, and justify a close of the business and withdrawal of the capital, which right of dissolution we reserve to ourselves, if manifest want of success

shall, after a trial of six months, make it appear to be absolutely necessary in the opinion of the contributors of the sum thus instrusted.

"Witness our hands and seals this 18th day of July, A. D. 1885.

"HENRY P. FORD, [Seal.]
"W. W. WILSON, [Seal.]

"In conformity with the spirit and design of the trust specified above, to my wife Katie A., for the use and support of my family, etc., I hereby renounce all my right to her personal services, and disclaim all demands of responsibility on her part, and all interest in any profits to myself arising from her investiture of the said trust, which would otherwise be matter of right and subject of control belonging to me as her husband.

"Witness my hand and seal this 18th day of July, 1885.

"W. F. GRAHAM, [Seal.]

"Received, Pittsburgh, July 18, 1885, from H. P. Ford, one thousand and twenty-nine sixty-one hundreth dollars, and from W. W. Wilson, five hundred and sixty dollars, in trust for the benefit and use of myself and children, with interest thereon, and redeemable in six months from date, to be placed under the agency of my husband for the above purposes.

"KATE A. GRAHAM."

Under the terms of the foregoing deed of trust, Mrs. Graham opened up the store, and employed her husband to carry on the business for her. The business was thus conducted, Mr. Graham out of the proceeds paying in full the indebtedness represented by the judgments of Ford and Wilson, until December 18, 1887, when Samuel Kilgore, having obtained his judgment, issued execution and caused the levy to be made on the goods as the property of W. F. Graham, out of which these proceedings arose.

Samuel Kilgore and W. F. Graham had been partners in the hat and fur store, 425 Wood street, prior to July 31, 1884. On that date, the partnership was dissolved, Kilgore selling his interest in the store to Graham for four thousand dollars; five hundred dollars of which was in cash, notes given for part of the balance, and Graham assuming certain partnership notes for the remainder. On July 7, 1885, the day after the judgments against Graham in favor of Mrs. Graham, Ford, and

Wilson, were entered, one of the partnership notes that Graham was to pay matured; on July 21st another such note matured, and on August 1st one of Graham's notes to Kilgore matured. Graham had been unable to obtain an extension on any of these notes. From these and other facts in evidence, it was claimed on the part of the defendant in the issue, that the sheriff's sale beginning on July 13, 1885, and the trust-deed transaction, were for the purpose of hindering and delaying the creditors of Graham, but no evidence was adduced attacking the character of the Mrs. Graham, Ford, and Wilson judgments as representing bona fide indebtedness. So far as the Ford and Wilson judgments were concerned, there was direct evidence that they were valid.

At the close of the testimony, the court, COLLIER, J., charged the jury at length and answered certain points for instruction as follows:

The court is requested by the defendant to charge:

1. That, under all the evidence in the case, the verdict should be for the defendant. Answer: Refused.

If the court refuse to charge the jury as above requested, then the defendant prays instructions as follows:

2. The intention of the parties to the several suits and executions, by virtue of which the goods of W. F. Graham were levied upon and sold, is a question of fact for the jury, and is to be ascertained from all the testimony in the case. Answer: Affirmed.

3. If a writ of execution be issued and prosecuted to protect the property of a debtor against his creditors, or for other than a bona fide intention of collecting a just debt, it is to be deemed fraudulent as to such creditors; and this is true, even though the defendant in the execution be honestly indebted to the plaintiff for the sum specified in such writ of execution. Answer: Affirmed.

4. Writs of execution issued, and all sales made thereon, with intent to delay, hinder and defraud other creditors, are illegal and void. Answer: Affirmed.

5. If the confessions of judgment made by W. F. Graham, the sale of his property by the sheriff upon executions issued thereon, and the deed of trust, so called, were parts of a scheme to prevent other creditors of Graham from collecting their

claims, the proceeding was fraudulent and void, and the jury should return a verdict for the defendant in this issue. Answer: Affirmed. [2]

6. Where a husband confesses judgment to a trustee in favor of his wife, it is necessary, in a contest with her husband's creditors whose debts existed when the judgment was confessed, for the wife to establish that the judgment was given to her bona fide, to secure a debt due to her by her husband, being a part of her separate estate. The presumptions are all against her; and in the absence of such proof, the judgment will be deemed fraudulent as against his creditors. Answer: Affirmed. [3]

7. While it is true that under the laws of Pennsylvania a trust may be created for the benefit of the wife and children of an insolvent debtor, and that such trust-estate is not liable for the debts of the husband or father, yet if the jury believe from the evidence that the proceeding prior to the making of the trust deed in this case, and the deed itself, were part of a scheme to transfer the title of the goods and property of Graham to his wife, for the purpose of hindering and delaying creditors of Graham, the verdict must be for the defendant. Answer: Affirmed. [4]

8. Even though the jury should believe that Messrs. Ford and Wilson had no other purpose in view than the collection of their respective claims, yet if they permitted their judgments and the executions thereon to be used so as to aid Graham in the purpose of transferring the title of his property from himself to his wife, with the intent thereby to hinder and delay his creditors, then the verdict must be for the defendant. Answer: Affirmed. [5]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (2–5) the affirmance of the defendant's points.

*J. S. Ferguson*, with him *E. G. Ferguson, L. B. Duff, C. C. Montooth* and *E. A. Montooth*, for the appellant.—Counsel cited: Wieman v. Anderson, 42 Pa. 311; Welch v. Kline, 57 Pa. 428; Manderbach v. Mock, 29 Pa. 43.

*John S. Lambie*, with him *A. M. Brown*, for the appellee.— Distinguishing the cases cited for the appellant, counsel cited:

Schott v. Chancellor, 20 Pa. 199; s. c. 23 Pa. 68; McAllister v. Marshall, 6 Binn. 338.

OPINION BY MR. JUSTICE WILLIAMS, January 4, 1892.

The disposition of the feigned issue in this case depends on whether Mrs. Graham had title to the stock of goods levied on by the sheriff at the suit of Kilgore. This stock, or a stock of goods of the same general description, was owned, prior to the fourteenth of July, 1885, by W. F. Graham, her husband. On that day, the entire stock was sold by the sheriff, by virtue of several writs of fieri facias, one of which was issued upon a judgment in favor of H. P. Ford, one upon a judgment in favor of W. W. Wilson, and one in favor of Katie A. Graham, the plaintiff. Ford and Wilson became the purchasers at this sale. Not long after, they contributed their respective interests in the goods to the support of the family of W. F. Graham, by means of a deed to Katie A. Graham upon the express trust that the stock should be used for the support of the family, subject to the repayment to the grantors of the sums contributed by them respectively, viz., to H. P. Ford, the sum of $1,029.61, and to W. W. Wilson, the sum of $560. The business was thereafter conducted by Katie A. Graham, through her husband as her agent, until December, 1887, when Kilgore caused the stock to be seized as the property of W. F. Graham. Mrs. Graham made claim to the goods, and the sheriff applied to the court for an order requiring the claimant and the execution creditor to interplead.

Mrs. Graham did not claim as a purchaser at the sale by the sheriff, nor as a judgment creditor of her husband, but as the grantee in the trust deed made by Ford and Wilson; so that the validity of her title depended on that of her grantors. To defeat her claim it was necessary to show either that Ford and Wilson did not acquire a good title by means of the sheriff's sale, or that the instrument by which they transferred their title to Mrs. Graham was fraudulent, and intended by the grantors to hinder and delay the creditors of W. F. Graham. Mrs. Graham's judgment against her husband was in no way involved, and an inquiry into its consideration was irrelevant. It was a mistake, therefore, to affirm the defendant's sixth point. The proposition contained in the point is a correct

statement of a general rule of law. It is the duty of a married woman, claiming against her husband's creditors, to show that her claim is bona fide, and for a consideration growing out of her separate estate; but this doctrine is not applicable to this case, because the plaintiff did not claim under or through her judgment, but as the grantee of Ford and Wilson.

The learned judge erred, also, in his answer to the defendant's eighth point. He affirmed, without explanation, that, "even though the jury should believe that Messrs. Ford and Wilson had no other purpose in view than the collection of their respective claims, yet if they permitted their judgments and the executions thereon to be so used as to aid Graham in the purpose of transferring the title to his property from himself to his wife, with the intent thereby to hinder and delay his creditors, then the verdict must be for the defendant." Upon listening to this instruction, the jury might reasonably ask whose intent to hinder and delay creditors they were to make their verdict depend upon? They might read into the point, after the words "with the intent," the explanatory words "on their part," making the point refer to the intent of Ford and Wilson; or the words "on his part," making it refer to the intent of Graham. If the former reading be adopted, the point is contradictory and misleading. The jury could not properly find that the conduct of Ford and Wilson was induced or inspired by "no other purpose" than the collection of their debts, and yet find that it was inspired by another and a fraudulent purpose. Their conduct was honest, or it was dishonest. If they used the process of the court for the single purpose of collecting their debts, they made a proper and lawful use of it, and the sale of the goods by the sheriff to them gave them a good title. If, on the other hand, they used such process to hinder and delay the creditors of Graham, and prevent them from reaching his goods, the fraud taints their title, and the goods are open to seizure. If the other reading be adopted, so that Graham's purpose becomes the subject of inquiry, then the point should be refused. Ford and Wilson, if seeking the collection of their debts with no other purpose than to make themselves safe, cannot be affected by an undisclosed fraudulent purpose in the mind of Graham. They are responsible for their own frauds, but not for the fraud meditated or practiced by another, without their knowledge or conscious aid.

The important question of fact in the case was that which this point concedes in favor of the plaintiff, viz. : Had Messrs. Ford and Wilson some other purpose in view than the collection of their respective claims? Did they make use of their judgments, of the sheriff's sale, and the deed of trust, as parts of the machinery by which Graham's stock of goods was to be withdrawn from the reach of his creditors for his own benefit? That Graham may have desired this is not enough; that he may have preferred to fall into the hands of Ford and Wilson rather than into those of other creditors, is not enough. The fraud that shall defeat their title and that of their grantee must be brought home to them. They must have shared in the purpose, and aided in its execution. The third and fifth assignments are sustained.

The judgment is reversed, and a venire facias' de novo awarded.