FEDERAL SIGN SYSTEM, Appellant
v. AMAVET

(November 14, 1927. Opinion and Decree.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Evidence—Par. 223, 226.**

Parol testimony is not admissible to vary or contradict a written contract.

2. **Louisiana Digest—Obligations—Par. 79; Words and Phrases.**

"Unless" is a condition, "until" is a term.

3. **Louisiana Digest—Evidence—Par. 42, 261, 262.**

The failure to produce a witness who heard the verbal agreement of the parties to a contract prior to the writing of it cannot prejudice either party as the testimony of the witness was not admissible to contradict the written contract.

4. **Louisiana Digest—Obligations—Par. 76, 82, 93.**

The penal clause of a contract is the compensation agreed upon for the violation of the contract and is the law unto the parties.

Appeal from Civil District Court. Hon. M. M. Boatner, Judge.

Action by Federal Sign System against Maurice Amavet.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Sol Weiss, of New Orleans, attorney for plaintiff, appellant.

R. Weinemann, of New Orleans, attorney for defendant, appellee.

CLAIBORNE, J. This is a damage suit for failure to perform a contract.

The plaintiff alleged that on May 27th, 1920, he made a written contract with the defendant for the erection and lease of an electric sign which was "not to be put up until lessee advised"; that plaintiff constructed said sign and was ready to erect and install it and to render the service contracted for; that on February 17th, 1921, plaintiff wrote to the defendant complaining of his delay to fix a time to erect the sign and advising him that unless he fixed a time for that purpose within fifteen days that plaintiff would construe his silence as a renunciation of the contract and would claim the damages fixed by it. The term of the lease was for thirty-six months, for the price of $3.50 per week. The contract provided that "upon a breach of this agreement by the lessee the company may remove the sign, wiring, and all its other property, and cut off the supply of electricity, in which event the lessee will pay the company a sum equivalent to $7.00 for each unexpired month of the term of the contract, which sum is agreed to be the actual loss suffered by the company by reason of such breach". Therefore the plaintiff claimed $252.00 damages with legal interest from judicial demand.

The defendant denied all the allegations of plaintiff's petition but specially admitted "that said contract contains a condition that the sign was not to be put up until the lessee advised, and that, therefore, it was left absolutely optional with the lessee as to whether or not he would ever erect said sign and that that was the understanding, and defendant denies that plaintiff had any right to construct said sign, and "that it was entirely optional with him (defendant) as to whether said sign should ever be erected," and that "plaintiff had absolutely no right in violating said contract, to construct, erect, or install said sign unless ordered by defendant," and that plaintiff had no right or authority to put defendant in default as the matter was absolutely optional with defendant as to whether he ever should authorize said sign to be put up and that it was perfectly optional with defendant not to put up said sign and that plaintiff had no right to put up said sign".

There was judgment in favor of defendant rejecting plaintiffs' demand and it has appealed.

It will be seen that plaintiff's case depends upon the interpretation of the words written in pencil across the printed contract. "This sign is not to be put up" until lessee advises." The defendant contends that these words "to be put up" means that the plaintiff had no right to begin to "manufacture" or to "manufacture" the sign unless he was further advised by the defendant, and that the word "until" means "unless", or that the plaintiff had no right to manufacture the "sign" unless defendant so advised it.

Defendant attempted to prove by his testimony that such was the verbal understanding at the time of the signing of the contract. Over plaintiff's objection, the defendant testified "the man wanted me to give him the contract and not to give it to any other company, and I signed the contract understanding not to have the sign made until I wanted it. * * * I told the man not to make the sign until I advised him. I had a little better place and I intended to get the place next door to make the restaurant larger."

"I told him I would need a bigger sign and he wrote that across the face of the contract to protect me, and I could take the sign later; * * * I have a sign on my building now. It is a different sort of a sign; it is bigger; it is a special sign made by a different company; when I signed this contract with the plaintiff, I had just a little place at the corner; now, I have a place at the corner, and also a place next door, that's why I explained to the man when he came to me to sign the contract."

In a letter to the defendant dated February, 1921, offered in evidence, the plaintiff writes:

"At the time the contract was accepted by our company it was our understanding that it might be necessary for us to hold the sign at our store, say for two or three weeks after same had been completed, until you could decide as to just what position on the building you wanted the sign erected."

It is perfectly evident that all defendant's parol testimony against and beyond what is contained in the contract sued on, and on what may have been said before, or at the time of making the contract, or since, was in violation of Article 2276 (2256) of the Civil Code, and the objection of the plaintiff should have been sustained.

The defendant therefore remains with the words of the contract alone in their common and usual acceptation. C. C. 1946 (1941). When the words across the con-

tract read that the sign was "not to be put up until, etc.", they cannot be made to mean, as the defendant has testified, that it was not to be "made" or "constructed until" he wanted it, or gave the order, or "advised".

Nor can the word "unless" be substituted for the word "until" of the contract. The two words have a different meaning. "Unless" means a reservation or option to change one's mind provided a certain event happens, a conditional promise. "Until" means "up to a" certain time, or place or event. It is a term, not a condition. C. C. 2051 (2046). Under the clear meaning of the words of the contract, therefore, the plaintiff was not to "put up the sign until such time as the lessee advised".

That meant a reasonable time or term.

The obligation of the plaintiff to construct and install the sign, and of the defendant to accept delivery of it, became perfect at the time of the signing of the contract. The "putting up of the sign" alone was suspended "until the lessee advised". The word "until" did not mean or "never" if the defendant so chose, as he would have us construe the words.

It was not a conditional obligation on the part of the defendant, as we have stated above. It was an obligation with a term, C. C. 2051. Not being a condition it could not be the potestative condition contemplated by Article C. C. 2034 (2029) relied upon by defendant.

As parol testimony was not admissible "against or beyond what was contained" in the written contract, no presumption can be raised against the plaintiff for failure to produce plaintiff's agent who witnessed the contract.

C. C. 2125 (2121). The penal clause is the compensation for the damages which

the creditor sustains by the non-execution of the principal obligation. Jackson and Manson vs. Hoffman, 31 La. Ann. 97; Solomon vs. Diefenthal, 46 La. Ann. 897, 15 South. 183.

In the case of Stewart, Hyde & Co. vs. Buard, 23 A. 201, the plaintiffs, cotton factors, bound themselves to make advances to the defendants, cotton planters, to an amount of $6000; and the defendants "agreed to ship to plaintiffs the entire crop of their plantation which they warranted to amount to 400 bales of cotton, and if the number fell short of that number the commission shall be paid upon the deficiency at the rate of $5 per bale, liquidated amount".

The defendants having failed to make a crop, they were sued by the factors for $2000. The court said:

"The contract may have been rash, but it was not unlawful, nor was it without consideration."

The factors recovered judgment for the full amount.

The total price of the lease in this case was $546. The penalty was $252. We cannot say that it was unreasonable as we are not aware of the cost of construction of the sign, nor of the other expenses incidental to performing the contract, solicitor's commission, etc.

The defendant further contends that the plaintiff is not entitled to a judgment for the full amount of the penalty for the reason that the contract contemplated the putting up of the sign, which was not done in this case, and therefore plaintiff can recover only for actual damages suffered by him resulting from defendant's refusal to accept the sign. The answer to that defense is that those would have been the damages fixed by law, in the absence of

the penalty fixed by the contract. The penalty is the object of this suit, C. C. 1901 (1895). "Agreements legally entered into have the effect of laws on those who have formed them. They cannot be revoked, unless by mutual consent of the parties, or for causes acknowledged by law. They must be performed with good faith."

The defendant wilfully violated his contract, not only by refusing to accept the sign he had leased but by bargaining for another one with another company.

The judgment appealed from is therefore annulled and set aside, and it is now ordered that there be judgment condemning the defendant, Maurice Amavet, to pay to the plaintiff, the Federal Sign System (Electric), the sum of two hundred and fifty-two dollars with five per cent (per annum interest from June 16th, 1921, till paid and all costs of suit.