[Civ. No. 18980. Second Dist., Div. One. Nov. 21, 1952.]

NELDA D. ENGLISH, Appellant, v. CITY OF LONG BEACH et al., Respondents.

312

Kenneth Sperry for Appellant.

Irving M. Smith, City Attorney, and Clifford E. Hayes, Deputy City Attorney, for Respondents.

PATROSSO, J. pro tem.—Petitioner appeals from a judgment dismissing her petition for writ of mandate by which she sought to compel the defendant city of Long Beach, the members of its city council and other administrative officers to grant her a widow's pension under the provisions of section 187(4) of the city charter.

Appellant alleges that she was married to Henry W. English on December 12, 1940; that there was born as the issue of said marriage a child aged four years; that she was living with her husband at the time of his decease on April 11, 1950, and has not since remarried; that her husband was appointed to a position in the police department of the defendant city on July 16, 1942, and served regularly as a member thereof, except for such periods during which he was on authorized leave of absence, up to and until April 5, 1950, at which time he was compelled to retire from active service due to sickness caused by the discharge of his duties as a police officer; and that his death on April 11, 1950, was the result of injuries received by him during the performance of his duties as a police officer or from sickness caused or aggravated by the discharge of such duty. It is further alleged that on February 14, 1951, appellant filed an application for a widow's pension with the defendant city council but that said defendants have failed and refused to recognize petitioner's rights in the premises or to cause any pension payments to be made to her; that more than a reasonable time has expired since the filing of such application and that unless compelled to do so defendants will continue to refuse to grant her the pension to which she is entitled.

Upon the filing of the petition an alternative writ was issued to which respondents made return by filing an answer denying that petitioner's husband's death was service connected, and, while admitting that Mr. English had been appointed as a patrolman in the police department on the 16th day of July, 1942, and that he continued in this capacity until the 3d day of August, 1945, proceeds to allege that on the last named date the city manager filed charges against him, "dismissing him from the service of the City"; that on the 12th day of September, 1945, a hearing was held before the civil service board and thereafter the board made its order sustaining the charges and approving the dismissal; that Mr. English sought and obtained a peremptory writ of mandate directing the defendants named in said action to reinstate him to the position of patrolman; that defendants therein

took an appeal from said judgment and on August 31, 1948, the petitioner English obtained an order that the appeal not operate as a stay, whereupon the defendants reinstated him to the position of patrolman and he continued to work for the defendant city until April 5, 1950; that on April 17, 1950, the Supreme Court of California reversed the decision of the trial court in the mandate proceeding insofar as it ordered the reinstatement of English but ordered the entry of a judgment directing the civil service board to set aside its order sustaining the dismissal of Mr. English and to accord him a full and fair hearing. (*English* v. *City of Long Beach,* 35 Cal.2d 155 [217 P.2d 22, 18 A.L.R.2d 547].) It is further alleged that following the decision of the Supreme Court, on August 30, 1950, the trial court entered a judgment therein in accordance therewith but that no peremptory writ of mandate has ever been served upon the civil service board, and that the board has not set aside its previous order sustaining the dismissal of Mr. English nor has the board set the matter for hearing and that "the matter is still pending before the Civil Service Board."

The hearing upon the alternative writ was thereupon continued for one week, at which time appellant filed what is denominated a traverse to respondents' answer, in which it is admitted that written charges were filed by the city manager against Mr. English as alleged in the answer and alleges that such charges were to the effect that "he had failed to pass a certain physical examination and that it appeared from certain medical reports that he had contracted a physical ailment or defect which incapacitated him from the performance of his duties as a patrolman," but denies that Mr. English was dismissed from the police department on the date upon which the charges were filed or at any time; denies that the city manager had the right or power under the city charter to bring about the discharge of Mr. English without affording him an opportunity to be heard before the civil service board, and that any purported discharge could not become effective until he had been afforded a fair hearing before said board in respect to the truth of the charges; that Mr. English filed a written denial of the charges within the time provided by the rules and regulations of the civil service board and that, as determined by the Supreme Court of California in the case previously adverted to, he had never been afforded a fair hearing before said board. It is further alleged that at all times subsequent to September 1, 1948, Mr. English

"was carried on the payroll of the Police Department . . . and was certified by the Civil Service Board as being employed and performing services for the City of Long Beach in accordance with the provisions of the City Charter," and that he performed the services of a patrolman up to and including April 5, 1950, "at which time he was compelled to retire from active service by reason of a heart ailment which was directly attributable to the services performed by him as a patrolman in the Police Department of the City of Long Beach throughout the period from July 16, 1942, to April 5, 1950"; that if in fact Mr. English "had on August 3, 1945, contracted an ailment which prevented him from properly performing his duties as a patrolman . . . , said ailment was directly attributable to and caused by the services performed by him as a patrolman following his original appointment in July of 1942, and therefore was eligible to receive a disability pension at the time said written charges were filed against him in August of 1945, and regardless of whether or not it should eventually be determined by the Civil Service Board that he was physically unable to perform the duties of his position as patrolman, petitioner would be entitled to receive the death benefit pension provided by Section 187, Subd. (4) of the City Charter of the City of Long Beach"; that the Supreme Court of California had not been advised of Mr. English's death at the time it rendered its decision on April 17, 1950, and that because thereof it would be and is now imposssible for the civil service board to conduct a fair hearing of the isssues presented by the written charges filed on August 3, 1945. Finally it is alleged that on September 1, 1948, the civil service board of the city of Long Beach duly made and entered an order setting aside the purported dismissal of Mr. English and duly reinstated him to his position as patrolman and that at the time of his death he was a member of said department. ■ While counsel for respondents undertake to question the propriety of the filing of this document, it was clearly authorized (*Scott* v. *Superior Court*, 205 Cal. 525, 526 [271 P. 906]), and appellant was entitled to have the allegations contained therein considered with like effect as if originally set forth in her petition.

We have set forth in some detail the allegations contained in the pleadings because it is in the light thereof that we must judge the propriety of the manner in which this proceeding was disposed of in the trial court. Upon the date

to which the hearing had been continued counsel for appellant filed a written request for a jury trial upon the issues of fact raised by the pleadings, and requested the judge presiding to transfer the cause to a trial department inasmuch as the hearing would occupy two or three days. Counsel for respondents, however, moved the court that the proceeding be abated upon the ground that no hearing had as yet been held by the civil service board upon the charges filed against Mr. English on August 3, 1945. To this counsel for the appellant vigorously objected upon the ground, among others, that aside from what might be ultimately determined as to Mr. English's status in the police department subsequent to August 3, 1945, the pleadings raised a triable issue of fact, namely, whether his death occurred as the result of the injuries received by him during the performance of his duties as a patrolman or from sickness caused or aggravated by the discharge thereof during the time between his original appointment to the position on July 16, 1942, and August 3, 1945, throughout which period his status as a member of the department was not in question. In reply counsel for the respondents, while conceding that, if it were established that the death of appellant's husband was directly attributable to injuries or sickness incurred in the line of duty prior to August 3, 1945, she would be entitled to the relief which she seeks, urged that the motion should nonetheless be granted because the issues might be limited if a hearing upon the charges filed against Mr. English was first had before the civil service board.

The trial court granted the motion of counsel for the respondents, and, while stating that he would enter an order abating the proceeding, thereafter caused a judgment to be entered dismissing the petition and discharging the alternative writ. This action was clearly erroneous. The pleadings having tendered a factual issue which, if determined favorably to appellant, required the entry of judgment in her favor, she was entitled as of right to a trial thereon either by the court or, in the latter's discretion and as requested by counsel for appellant, by a jury. (Code Civ. Proc., § 1090.) It is only where the return to the alternative writ raises solely questions of law that the court is authorized to proceed to hear the matter upon the pleadings (Code Civ. Proc., §§ 1090, 1094) save in those instances where the application is, by stipulation, submitted upon the pleadings and in which event the affirmative allegations of

the answer may be taken as true if not denied. (*Fox* v. *Workman,* 6 Cal.App. 633 at 635 [92 P. 742] ; *McClatchy* v. *Matthews,* 135 Cal. 274, 276 [67 P. 134] ; *Charles L. Donohoe Co.* v. *Superior Court,* 79 Cal.App. 41, 44 [248 P. 1007] ; *Brown* v. *Superior Court,* 10 Cal.App.2d 365, 368 [52 P.2d 256] ; *Vanderbush* v. *Board of Public Works,* 62 Cal.App. 771, 775 [217 P. 785].) Here, however, as previously noted, appellant did not agree to submit her application upon the pleadings but insisted upon her right to adduce testimony in support of the issues of fact presented thereby. ■ Moreover if all of the affirmative allegations contained in respondents' answer were taken as true, they would not constitute a defense to the petition for, as already noted, and expressly conceded by counsel for respondents, proof that the death of appellant's husband occurred as a direct result of injuries or sickness arising out of the performance of his duties as patrolman prior to August 3, 1945, would have entitled appellant to judgment. (*Wood* v. *Board of Police & Fire Pension Commrs.,* 49 Cal.App.2d 52 [120 P.2d 898] ; *Holt* v. *Board of Police & Fire Pension Commrs.,* 86 Cal. App.2d 714 [196 P.2d 94].)

Nor, as contended by counsel for respondents, was appellant compelled, in order to obtain a hearing upon the factual issues thus presented, to amend her petition and restrict her claim solely to death resulting from injuries or illness sustained by her deceased husband during his period of service in the police department prior to August 3, 1945, at least in the absence of a special demurrer, and none was interposed here. ■ The fact that a litigant may predicate her cause of action in part upon allegations of fact which she may not be able to establish upon the trial or which, if proved, would not in themselves entitle her to the relief which she seeks, does not operate to deprive her of the right to have her cause heard and determined where facts are alleged which, if proved upon the trial, would entitle her to judgment. ■ Moreover counsel for appellant expressly offered to prove that Mr. English's death occurred as a result of injuries which he sustained *prior* to August 3, 1945, but the offer was refused by the trial court. This ruling was erroneous for if the proffered proof were made, appellant must necessarily prevail.

Since the errors above adverted to necessitate a reversal of the judgment, this opinion might well stop here without consideration of other questions presented. However, inas-

much as these will undoubtedly arise upon a retrial and counsel have discussed and invite our decision thereon, we shall undertake to dispose of them in the hope that by so doing the final determination of this proceeding may be expedited.

The primary question remaining to be determined is the status of the appellant's husband as a member of the police department during the period intervening between the filing of the charges against him on August 3, 1945, and the date of his retirement immediately preceding his death, during all of which time, following the action of the civil service board setting aside its previous order approving his dismissal and ordering his restoration to his position of patrolman, he regularly performed the duties thereof, was regularly carried on the payroll of the department, and received the compensation attached to the position.

On behalf of the respondents it is urged that when the city manager undertook to dismiss Mr. English and filed charges with the civil service board he thereupon ceased to be an employee of the police department, and that "his sole right was to be reinstated to his position by the Civil Service Board after a hearing." On the contrary counsel for appellant contends that, under a proper construction of the applicable provisions of the city charter, a dismissal of an employee in the classified service cannot be effected until after the charges filed against him with the civil service board are heard and determined in the event the employee seeks such hearing. The charter provisions with which we are concerned are the following:

"Sec. 90. The powers and duties of the City Manager shall be:

"(a) To see that all laws and ordinances are enforced.

"(b) To appoint and, except as herein provided, to remove all heads or directors of the departments, and all subordinate officers, assistants, deputies, clerks, attaches and employees in both the classified and unclassified service . . . All appointments shall be upon merit and fitness alone, *and in the classified service all appointments and removals shall be subject to the civil service provisions of this charter*. (Emphasis added.)

. . . . . . . . . . . . . .

"Sec. 106. *No employee in the classified service shall be discharged or reduced in rank or compensation until he has been presented with reasons for such discharge or reduction*

*in rank or compensation specifically stated in writing, and has
been given an opportunity to be heard before the Board in his
own defense.* The reason for such discharge or reduction and
any reply thereto by such employee, shall be in writing and
filed with the Civil Service Board. Verified written charges
may be filed by any qualified elector of the City of Long
Beach under such rules and regulations as may be prescribed
by the Civil Service Board. All charges shall be heard and
trials had under such rules as the Civil Service Board may
prescribe. PROVIDED, that the provisions of this section are at
all times subject and subordinate to the provisions of Section 108. (Emphasis added.)

"Sec. 107. Any employee of any department in the city
in the classified service who is suspended, reduced in rank, or
dismissed from a department by the head of that department,
or the City Manager, may appeal from the decision of such
officer to the Civil Service Board, and such Board shall define
the manner, time and place by which such appeal shall be
heard. *The judgment of such Board shall be final;* PROVIDED,
that the provisions of this section are at all times subject and
subordinate to the provisions of Section 108." (Emphasis added.)

Section 108 referred to in section 107 last above noted relates to summary dismissals of noncivil service employees by
the city manager with the consent of two-thirds of the city
council and is without application here.

All of these sections must, of course, be read and considered together, for while section 90 empowers the city manager to remove employees in the classified service the power
thus granted is expressly made subject to the civil service provisions of the charter. Likewise, while section 107 speaks of
an employee "dismissed" by the city manager, the expression is qualified by the language immediately following granting to such an employee a right of appeal to the civil service
board. These sections alone would seem to indicate that there
is no finality in the act of the city manager in filing charges
against an employee in the classified service, but if doubts
remain upon this score, they are effectively dispelled by section 106 which in language too clear to be misunderstood unequivocally declares that no employee in the classified service shall be discharged *"until* he has been presented with
reasons for such discharge . . ., and has been given an opportunity to be heard before the Board in his own defense."

■ A reference to Words and Phrases discloses that the word "until" has been judicially defined as follows: " 'Until' means up to a certain time, or place or event. It is a term not a condition. *Federal Sign System* v. *Amavet*, 7 La.App. 680, 682. . . . Office of word 'until' is to fix some point of time or some event, upon arrival or occurrence of which what precedes will cease to exist. *Herrin* v. *National Fire Ins. Co. of Hartford, Conn.*, 26 P.2d 637, 46 Wyo. 330. . . . 'Until' means up to the time when. *Hild* v. *Polk County*, ——Iowa ——, 49 N.W.2d 206, 208. . . . The word 'until,' when used as conjunction, means 'up to a specified time.' *In re Staats' Will*, 69 N.Y.S.2d 894, 897, 272 App.Div. 139." Such also is the dictionary definition of the word. In Webster's New International Dictionary (2d ed.) when used as a preposition, it is defined as "During the whole time before; up to the time of, implying cessation or reversal at that time," and as a conjunction it is defined as "Up to the time that or when; till such time as."

■ If, as the foregoing clearly dictates, the discharge of an employee in the classified civil service must be preceded not only by the filing of charges against him with the civil service board but as well by a hearing thereon before the board, it necessarily follows that until each of these events occurs his status as such employee does not cease to exist.

While neither the industry of counsel nor our independent research has served to disclose any authority directly dealing with a like question arising under substantially similar statutory provisions, the conclusion indicated above finds support in the language of our Supreme Court in *Steen* v. *Board of Civil Service Commrs.*, 26 Cal.2d 716 [160 P.2d 816], which involved a charter provision of the city of Los Angeles reading substantially the same as sections 106 and 107 of the charter of the city of Long Beach quoted above but with the important difference that there it was specifically provided that upon the filing of the charges with the board of civil service commissioners "such removal, discharge or suspension shall take effect." There the precise question was whether the filing of the charges with the Civil Service Commissioners operated as a discharge of the employee within the meaning of section 112½ of the charter which required one claiming to have been illegally discharged to file a written application for reinstatement within 90 days "following the date on which it is claimed that such person was first illegally . . . discharged." In returning a negative answer thereto the court

said (p. 720) : "Although the department is given the power to discharge, it may only do so for cause. The grounds of the discharge must be set forth in its notice of discharge which must be both filed with board and served upon the employee affected; *thus indicating that the department's action is not to be deemed final, but rather as a preliminary step in a series.* It is true the section states that upon the filing of the notice the discharge shall take effect, but, rather than implying finality to the action, that provision means in effect that the employee shall be required to cease working in his position and that the department need not accept his services pending the ultimate disposition of the matter, thus establishing the policy of relieving the department from the detrimental aspects of having, in the interim, actively working on its staff, an employee considered unsatisfactory. Following the filing and service of the notice there are administrative remedies which may be pursued by the employee. Thus, within fifteen days the board may, on its own motion, or on the employee's application, made within five days, 'investigate the grounds' for the discharge. If the board finds that the grounds for the discharge are insufficient and that the employee is fit and suitable, it may reinstate him. Although no express provision is made therefor, we believe it follows by necessary implication that the board may, as it did in the instant case, make an order sustaining the discharge. *Presumably if the board did not act on its own motion within the fifteen days, or if no application for relief were filed by the employee within the time specified, the discharge would become final and effective at the expiration of such time.* The proceedings before the board are in the nature of administrative remedies or process which are a part of the ultimate discharge. If the employee fails to pursue those remedies the court will not listen to his plea for reinstatement inasmuch as he would not have exhausted his administrative remedy (see *Alexander* v. *State Personnel Board,* 22 Cal.2d 198 [137 P.2d 433]; *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715]), *thus further indicating that the procedure before the board is a part of the entire scheme for the discharge of civil service employees. That thought is further evinced by the final statement in section 112(a) that the action of the board is final and conclusive. One phase of the finality would be that the discharge proceedings had been completed*

*and were effective for all purposes when the board made its order."* (Emphasis added.)

Here not only is there absent from the charter express language to the effect that the dismissal of a civil service employee shall take effect upon the filing of charges against him with the civil service board or that he shall stand suspended pending a hearing thereon, but we fail to discern any language therein which by necessary implication suggests that such was the intent of the framers of the charter. As already indicated the ordinary and usual meaning of the language employed is to the contrary. Nor do we perceive that the conclusion expressed herein is in anywise inconsistent with the decision of the Supreme Court in *English* v. *City of Long Beach,* 35 Cal.2d 155 [217 P.2d 22, 18 A.L.R.2d 547], as suggested by respondents. As we read the opinion we fail to find therein any intimation that the court was of the view or intended to declare that Mr. English's dismissal became effective upon the filing of the charges against him with the civil service board; rather the opposite would appear to be true for the real point decided was that, not having been accorded a fair hearing, the order of the civil service board purporting to sustain his dismissal was a nullity. Accordingly the trial court was ordered to enter a judgment directing the civil service board to set aside its previous order sustaining Mr. English's dismissal and to afford him a full and fair hearing. The entry by the trial court of such a judgment pursuant to the Supreme Court's mandate unquestionably constitutes a final adjudication that the proceedings theretofore had looking to Mr. English's dismissal were abortive. From this it can only be concluded that until a full and fair hearing as directed had been accorded him and an order duly made by the civil service board sustaining his dismissal, his status as a member of the police department remained unimpaired.

Neither are we impressed by respondents' argument that the holding of the Supreme Court that the trial court erred in ordering his reinstatement necessarily implies that it was of the view that he ceased to be an employee of the city upon the filing of the charges against him with the civil service board when considered in the light of the precise question determined, namely, that he had not been legally discharged from his position. In stating that the judgment of the superior court should not have directed the reinstatement of Mr. English, we do not believe the Supreme Court intended thereby any more than that the city was not compelled to abandon its

efforts to bring about his discharge but should be left free to do so upon a proper compliance with the provisions of the charter. This affirmation by the court of the right of the civil service board to conduct a hearing upon the charges despite its previous abortive attempt to do so does not, however, presuppose or rest upon a determination that Mr. English had been effectively separated from his position upon the mere filing of charges against him or that an order of discharge, if made by the board following a proper hearing, would operate retroactively to accomplish this result. If it be conceded, as it must, that the effect of the Supreme Court's decision was to declare that, as of the date of the rendition thereof, Mr. English had not been legally separated from his position of patrolman, it seems wholly illogical to argue, as do respondents, that the court nonetheless entertained the view that he had ceased to be an employee of the city upon a date almost two years previously by virtue of the very proceedings which the court declared ineffectual to accomplish this result.

Throughout respondents' brief there occurs the argument that the civil service board is the only body authorized by law to determine whether a contract of employment existed between the city and Mr. English following the filing of charges against him. This assumption is palpably erroneous. The only power vested in the board by the charter in this respect is to conduct a hearing upon the charges and thereafter make a finding thereon. The question as to the status of a civil service employee following the filing of such charges and pending a hearing thereon is purely one of law which the courts alone are competent to determine.

All this aside, it must not be overlooked that long prior to the decision of the Supreme Court the civil service board had vacated its previous order approving the dismissal of Mr. English and ordered him reinstated to duty as of August 3, 1945. While we appreciate, as respondents insist, that this order was made by the board under the compulsion of the peremptory writ of mandate issued by the superior court, and likewise agree that it did not operate to estop the board, following the decision of the Supreme Court, from proceeding with a hearing of the charges against him if his employment had not previously been terminated by his retirement or death, in evaluating respondents' contention we may well consider the consequences to Mr. English if he had refused to report for duty in compliance with the civil

service board's order. Can it be doubted that in such event he would thereby have subjected himself to discharge? Thus, although obliged to perform the duties of the position at the risk of being discharged therefrom, acceptance of respondents' argument would compel the conclusion that in the performance thereof he was not doing so as an employee of the city. As a necessary consequence, if, while so engaged and undertaking to effect the arrest of one charged with the commission of a felony, he was killed by the person sought to be apprehended, petitioner would be denied the pension benefits granted by the charter to widows of members of the department killed in line of duty. Were the language of the charter less clear than it is, we yet would hesitate to adopt a construction thereof productive of such absurd and harsh results.

In light of what has already been said, we need not pause to inquire whether, by reason of Mr. English's death, a full and fair hearing could now be held before the civil service board upon the charges filed against him. This because such a hearing would be but an idle act, for if the board undertook to make an order of dismissal following such hearing, the same could not operate retroactively to impair his status as a member of the police department at the time of his retirement and subsequent death.

The judgment is reversed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied December 8, 1952, and respondents' petition for a hearing by the Supreme Court was denied January 19, 1953. Edmonds, J., and Spence, J., were of the opinion that the petition should be granted.