[L. A. No. 24637. In Bank. Dec. 31, 1957.]

CARL H. PEARSON, Appellant, v. COUNTY OF LOS ANGELES et al., Respondents.

*Assigned by Chairman of Judicial Council.

524

S. V. O. Prichard for Appellant.

Harold W. Kennedy, County Counsel, Edward H. Gaylord and Andrew O. Porter, Deputy County Counsel, for Respondents.

SCHAUER, J.—Plaintiff appeals from a judgment denying and dismissing his petition for mandate to compel defendants to receive from him a sum of money sufficient to make plaintiff "fully paid up in his retirement right" in the Peace Officers Retirement System, and thereupon to retire him with a pension, and to either conduct a hearing with respect to certain charges filed with the Los Angeles County Civil Service Commission or dismiss those charges and restore him to his position as a deputy sheriff in order that he may retire as provided by law. We have concluded that the judgment should be reversed and the superior court directed to issue its writ of mandate requiring the civil service commission to conduct a hearing on and dispose of the pending charges, and take such other action, if any, as may be appropriate to resolve the issues before it, and requiring the Board of Retirement of the Los Angeles County Employees' Retirement Association to vacate its order denying plaintiff's application for retirement, and to reconsider and pass on such application in the light of this opinion and the evidence which may then be adduced.

The case was presented in the superior court upon a stipulation of facts, which is a part of the record. Therefrom it appears that plaintiff was actively employed as a deputy sheriff of Los Angeles County from December 24, 1924, until

December 13, 1950, when he was suspended for 30 days for failure to make a certain report.[1] During this period plaintiff was a member of the peace officers retirement system and until his suspension he made all required contributions. A member of that system becomes eligible to retire with a pension upon reaching the age of 55 (Gov. Code, § 32050). Plaintiff became 55 on July 23, 1951.

On December 19, 1950, the sheriff of Los Angeles County notified plaintiff by letter that he had been discharged as of December 16 upon the asserted basis that plaintiff had made certain false statements to police officers with reference to circumstances surrounding the death of Attorney Samuel Rummel, a matter which was then under police investigation. The letter further informed plaintiff that he had a right to file a written reply to the charges against him and to request a hearing before the civil service commission. A copy of the letter was sent to that commission. Within the time allowed plaintiff filed a reply to the charges and requested a hearing.

Shortly thereafter, plaintiff was indicted on a charge of violating section 6200 of the Government Code, a felony which relates generally to alteration or removal of public records by their custodian.[2] Specifically, plaintiff was accused of taking certain confidential police department records to the office of Attorney Rummel for the purpose of discussing a subject not in line of or connected with plaintiff's official duties.

Plaintiff requested the civil service commission to postpone its hearing on his discharge until after determination of the criminal charges against him. On February 8, 1951, the commission notified plaintiff by letter that it had ordered the hearing off calendar "until notified by you of the disposition of the criminal case now pending in the Superior Court."

---

[1]On the evening of Sunday, December 10, 1950, plaintiff had visited the office of Samuel Rummel, a Los Angeles attorney. The following morning plaintiff learned that Rummel had been killed the night before, but throughout that day, December 11, until that night, plaintiff did not report his visit to Rummel's office to his superior officers, even though he was aware that the death was under intensive police investigation. It was charged that by failing to so report plaintiff unnecessarily withheld for many hours information which was the subject of inquiry, and that such withholding constituted neglect of duty, for which plaintiff was suspended.

[2]Section 6200 of the Government Code provides that "Every officer having the custody of any record . . . or of any paper . . . filed or deposited in any public office, or placed in his hands for any purpose, who is guilty of stealing, . . . removing or secreting the whole or any part of such record, . . . [or] paper, . . . or who permits any other person to do so, is punishable by imprisonment in the State prison not less than one nor more than 14 years."

Plaintiff was convicted of the felony charge on July 16, 1951. On September 4, 1951, proceedings in the superior court were suspended and plaintiff was placed on probation. No judgment of conviction appears to have been pronounced but plaintiff appealed from an order denying his motion for a new trial. He contended that no crime had been committed in that the documents taken to Mr. Rummel's office were mere memoranda made by plaintiff and were his own property. In affirming the order the District Court of Appeal held that (*People* v. *Pearson* (1952), 111 Cal.App.2d 9, 16 [244 P.2d 35]) "The question of his intent is not involved. The mere doing of an act forbidden by the statute is the sum total of the judgment against him ... [p. 29.] The question ... whether the public had access to the papers and documents removed ... was not relevant ... [p. 31.] A public record embraces any document or record which may properly be kept by an officer in connection with the discharge of official duties . . . [even though it may be memoranda made by the officer and claimed as his own]. [T]he statute is violated if the paper or document removed had been *placed in the hands of a public official for any purpose ...*" The remittitur was filed in the superior court on July 9, 1952. On April 16, 1953, plaintiff having complied with the probationary terms, the cause was dismissed by the superior court and the criminal charges were expunged from the record. (Pen. Code, § 1203.4.)

On September 11, 1951, plaintiff had written to the Los Angeles County counsel, stating that the hearing before the civil service commission had been postponed pending determination of the criminal charges, that he had been informed that unless a hearing was conducted by the commission within a year his right to reinstatement would be lost, and that it appeared that the criminal matter would not be completed within the year. Plaintiff asked for advice in the premises.

The county counsel, by letter dated September 19, 1951, replied that "there was no rule requiring hearings on discharge to be had within a year of the discharge. Such hearing can be held at any time." The letter further advised plaintiff that the "Commission would not set the date of the hearing until the matter was brought to their attention either by you or by the Sheriff," and that he should "write the Commission, notifying it when you will return and ask that the hearing be set some time after that date."

On December 18, 1951, plaintiff advised the commission

by letter that he had appealed his superior court conviction and that as soon as the District Court of Appeal rendered its decision "I will notify you and request that my case be put back on your calendar for a hearing."

On May 19, 1953, about a year after plaintiff's conviction was affirmed, and about one month after the criminal charges against him had been finally dismissed and the record expunged upon the showing of his compliance with the probationary terms, plaintiff again wrote to the commission, referring to their letter to him of February 8, 1951, and stating: "The matters that were at that time before the Superior Court have now been disposed of. May I respectfully request that my hearing be placed on calendar for as early a date as possible?"

On the following day, May 20, 1953, the commission wrote plaintiff that it had "ordered that your request be denied because of the unreasonable lapse of time since the original request for hearing was made." Plaintiff's application for a rehearing of his request for a hearing was also denied, and on July 2, 1953, the commission wrote plaintiff that "The County Counsel has advised us that inasmuch as your request for a hearing was not made within a reasonable time, your rights to any further proceedings before this Commission are lost and the discharge is now final." (It may be noted that the statement that "the discharge is now final" does not purport to declare *when* it became final.)

On June 22, 1953, plaintiff had also filed with the county board of retirement an application for retirement to be effective as of July 24, 1951. This application is endorsed "Approved: Subject to determination of eligibility by Retirement Board. E. W. Biscailuz Head of Department." It was denied on July 13, 1953.

On March 16, 1954, plaintiff filed a petition for mandate in the superior court, naming as respondents all of those named herein with the exception of the three members of the board of civil service commissioners, and E. W. Biscailuz, sheriff. The exact prayer of the March 16, 1954, petition is not shown by the record, but it "alleged each and all of the facts" alleged in the pending petition. The 1954 petition was denied on June 28, 1955, on the ground that the application to the court was premature in that the charges against plaintiff were still pending before the commission. The written and signed order expressly declares that the denial is without

prejudice to further proceedings by plaintiff.[3] Thereafter plaintiff requested both the sheriff and the commission to proceed on the charges against him, but both refused. A request that the sheriff restore plaintiff to his position as deputy sheriff in order that he might retire immediately was also refused.

On April 26, 1956, plaintiff filed his present petition for mandate to compel his retirement with a pension, and to order the commission to either proceed on the charges against him or dismiss them. Plaintiff's position is that he has never been effectively discharged and therefore that he is entitled to retire with normal pension rights. Defendants contend that plaintiff was automatically discharged upon his conviction of a felony, that in any event he has waived his right to a hearing before the commission, that the present proceeding is barred by the statute of limitations, and that plaintiff has forfeited his pension rights. The trial court denied the petition and it is from such denial that the subject appeal is taken.

To begin with it must be recognized that "A public

---

[3]Such order reads as follows:

"The Court is of the opinion that this proceeding is premature; that the Court cannot decide the questions here involved until the Civil Service Commission has held a hearing on the charges still pending against petitioner.

"When a notice of discharge is given and the respondent demands a hearing, the discharge is stayed until a hearing is held and the Commission has decided the matter.

"In connection with the discharge proceedings the Civil Service Commission, in the opinion of the Court, wrongfully denied petitioner a hearing. The Court cannot assume that the Commission would find the charges against petitioner to be sustained, nor assume what penalty would be imposed by it. It might sustain the discharge or impose a lesser penalty.

"If a writ of mandate were sought to require the Commission to hold a hearing, in the opinion of the Court, it should be granted.

"No plea of laches would lie as there has been no prejudice. Petitioner seeks to have his right to a pension established and offers to make all required payments. The situation is not the same as in cases where an employee seeks reinstatement to a position from which he has been discharged. In such cases prejudice is presumed if there has been an unreasonable delay.

"As the Commission is not a party to this proceeding the Court cannot grant such a writ herein.

"The motion for a peremptory writ of mandate is denied, without prejudice to the filing of a supplemental petition, or a new petition if petitioner is so advised, for a writ of mandate for the same relief as herein prayed for, after the Civil Service Commission has held a hearing on the charges still pending against petitioner, if petitioner's discharge is sustained by it.

Dated: June 28, 1955. ARNOLD PRAEGER
 Judge."

employee who serves under pension provisions similar to those . . . [here involved] acquires a vested contractual right to a substantial pension. This right arises before the happening of the contingency which makes the pension payable . . .'' (*Wallace* v. *City of Fresno* (1954), 42 Cal.2d 180, 183 ▪ [265 P.2d 884].) ▪ It is, of course, also true that an employe may not be deprived of vested contractual rights except by a procedure which affords him due process, including an opportunity to be heard.

Plaintiff first attacks the trial court's implied holding that when plaintiff was convicted of a felony on July 16, 1951, he was on that date—even though no judgment of conviction was ever entered and the charges were subsequently expunged— automatically discharged from his position as deputy sheriff, and that since such discharge was prior (by one week) to July 23, 1951, the date on which plaintiff reached the age of 55, he never became, nor could he ever become, eligible to receive pension payments. We assume for the purposes of this litigation, without deciding, that plaintiff was ''convicted'' on the date that the verdict was returned (July 16, 1951) rather than on the date that probation was granted (September 4, 1951) notwithstanding the provision of Penal Code, section 1237, that ''an order granting probation shall be deemed to be a final judgment'' for the purposes of appeal, and that such conviction may still be considered as a possible ground for termination of employment regardless of the probation proceedings and orders. Plaintiff contends, however,—and we agree with him—that the statutes (Gov. Code, §§ 1028 and 1770) relied on to support the trial court's conclusion do not apply here.

▪ Section 1028 of the Government Code provides in material part that ''Any person who has been convicted of a felony in this State . . . is disqualified from holding office or being employed as a peace officer of the State, county, . . . or other political subdivision, whether with or without compensation, and is disqualified from any office or employment by the State, county, . . . or other political subdivision, whether with or without compensation, which confers upon the holder or employee the powers and duties of a peace officer. . . .''

It is immediately apparent that section 1028 does not automatically upon conviction of a felony effectuate an ouster from office or employment; at most it provides a basis for discharge. Defendants contend, however, that section 1770 implements section 1028 and automatically accomplishes

dismissal on occurrence of the specified event. Section 1770 provides in pertinent portion that "An office becomes vacant on the happening of any of the following events before the expiration of the term: . . . (h) His [the incumbent's] conviction of a felony or of any offense involving a violation of his official duties." Plaintiff argues, *inter alia,* that section 1770 is not applicable here because it, unlike section 1028, refers solely to "officers" and not to "'employes,'" and plaintiff claims that he was merely a county employe, and not an officer.

 This latter argument need not be resolved, for we agree with plaintiff's further contention that even if (for purposes of this decision) he is deemed to be an officer within the purview of section 1770, still he was not automatically discharged upon his conviction of a felony, for application of the subject statute was precluded by section 7½ of article XI of the California Constitution and certain pertinent sections of the Los Angeles County Charter. Plaintiff's position is that, irrespective of sections 1028 and 1770 of the Government Code, the discharge of a Los Angeles County civil service appointee can be accomplished only by compliance with the provisions of the county charter and ordinances enacted pursuant thereto, and that the latter provisions do not encompass automatic removal from office upon conviction of a felony.

Section 7½ of article XI provides in material part: "It shall be competent, in all charters, framed under the authority given by this section to provide, in addition to any other provisions allowable by this Constitution, and the same shall provide, . . . 5. For the fixing and regulation by boards of supervisors, by ordinance, of the appointment . . . of assistants, deputies . . . and other persons to be employed . . . in the several offices of the county, and for the prescribing and regulating by such boards of the . . . terms for which they shall be appointed, and the manner of their appointment and removal; . . .

"Whenever any county has framed and adopted a charter, and the same shall have been approved by the Legislature, as herein provided, the general laws adopted by the Legislature in pursuance of Sections 4 and 5 of this article, shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter, and for which provision is made therein, except as herein otherwise expressly provided; . . ."

 Defendants argue that sections 1028 and 1770 of

the Government Code were not enacted pursuant to sections 4 or 5 of article XI, and therefore that the local supremacy provisions of section 7½ are inapplicable in this case. Defendants are mistaken in this contention.

Section 4 of article XI was repealed in 1933. However, section 5 provides in part that "The boards of supervisors in the respective counties . . . shall regulate the number, method of appointment, terms of office or employment, and compensation of all deputies, assistants, and employees of the counties. . . .

"The provisions of this section shall not abridge, modify or otherwise limit the power of the Legislature by general and uniform laws to prescribe the qualifications of any county officer or of any deputy or assistant, or to prescribe the method of appointment of any person so qualified."

Whether or not the Legislature had section 5 in mind when (in 1949) it enacted section 1028, it is apparent that this act is an exercise of the power reserved to the Legislature to prescribe the qualifications of local officers. As such it was enacted pursuant to the reservation of section 5 and is thus subject to the limitations imposed by section 7½ insofar as it is inconsistent with valid county charter provisions. Section 1770, to the extent that it complements section 1028, is subject to the same limitations. The question therefore arises whether there is any inconsistency between sections 1028 and 1770 on the one hand and the provisions of the Los Angeles County Charter on the other, and, if so, what the effect of such inconsistency is.

Plaintiff was hired as a classified employe under the civil service system of Los Angeles County. The county charter provides in article IX for the establishment of a civil service system, and in section 34 states that the civil service commission shall "prescribe, amend and enforce rules for the classified service, which shall have the force and effect of law." These rules "shall provide . . . (13) For discharge or reduction in rank . . . only after the person *to be discharged* or reduced has been presented with reasons for such discharge or reduction. Such reasons shall state the specific grounds and the particular facts upon which the discharge or reduction is based, and the person *to be discharged* or reduced shall be allowed a reasonable time in which to reply thereto in writing. Both the reasons and the reply must be filed with the Commission, whereupon, if the person *to be discharged* or reduced shall so request, the Commission shall hold a hearing, and if it

finds that the reasons are not sufficient to justify such discharge or reduction, it shall so notify the appointing authority concerned and such notification shall be a bar to any discharge or reduction for the specific reasons which have been presented.'' (Charter of the County of Los Angeles (1949), § 34, subd. (13); italics added.)

 Section 45 of the Los Angeles County Administrative Code (Ordinance 5301, enacted March 29, 1949) provides that ''Any County officer, board, commission, or other body *may* declare any office or position in the classified service to which appointment is made by such officer, board, commission, or body, vacant upon the happening of any one or more of the events provided for in Sections 35, 35.5, 36, 37, 39, 40, 41 or 42. [Section 40 specifies conviction of felony as a cause for declaring a position vacant.] *When any such office or position is declared vacant* under Sections 36, 37, 39, 40, or 41, *the procedure set forth in Section 34, Subdivision 13 of the Charter shall be followed in its entirety.*'' (Italics added.)

It is apparent that under the above quoted provisions the post of a Los Angeles County classified civil servant is not vacated automatically upon his conviction of a felony. And, in the present case it is undisputed that plaintiff's conviction was never assigned as a reason for discharge and that no proceedings pursuant to subdivision 13 of section 34 were ever instituted based on such conviction. Thus it follows that plaintiff's removal from employment based on conviction of felony has not been accomplished through either of the above discussed theories.

Defendants contend, however, that the Government Code sections set forth principles governing a matter of statewide concern, and therefore are controlling in this case irrespective of the provisions of section 7½ of article XI. It is settled that local rules or regulations as to matters which a county is constitutionally empowered to regulate by charter supersede general state laws on the subject, except as to matters of statewide concern where the state has occupied the field. (See *Wilson* v. *Beville* (1957), 47 Cal.2d 852, 859 [6] [306 P.2d 789], and cases there cited.) But the general laws in question here do not appear to be part of an overall legislative design to occupy an entire field of law in a matter of statewide concern, as was the case with the laws relating to eminent domain (*Wilson* v. *Beville, supra,* p. 859 [7]), or workmen's compensation (*Healy* v. *Industrial Acc. Com.* (1953), 41 Cal.2d 118, 122 [7] [258 P.2d 1]). Rather, the

statutes here involved relate to but a narrow segment of the field of public employes, a field which the local governments have been granted the constitutional power to regulate.

It may be conceded that the state has an interest in establishing qualification standards for peace officers at all levels of government, and, as noted hereinabove, the power of the Legislature to prescribe such qualifications, for county officers is specifically preserved by section 5 of article XI. However, as also noted previously, section 7½ of article XI authorizes charter provisions which empower "boards of supervisors, by ordinance" to fix and regulate the manner of appointment and removal of deputies and other attaches, and specifies that such charter provisions, and necessarily the ordinances enacted thereunder, shall control over general laws on the subject which are enacted pursuant to section 5 of article XI. If sections 1028 and 1770 of the Government Code are held to control valid charter provisions relative to removal of peace officers, then any other general law relating to removal of public employes would also control over charter provisions, and a similar result would logically follow as to charter provisions and general laws relating to appointment of such officers and employes. Such a construction would render nugatory the constitutional provisions empowering local governments to control the manner of appointment and removal of their officers and employes. It thus follows that insofar as general qualification statutes attempt to regulate appointment and removal of local officials, they are subordinate to provisions of freeholders' charters, and valid ordinances enacted thereunder. (See *Scheafer* v. *Herman* (1916), 172 Cal. 338, 340 [155 P. 1084].) Inasmuch as the local enactments were not complied with here, it also follows that this facet of defendants' contentions must fall.[4]

Plaintiff next attacks the implied finding that, apart from any question of automatic discharge, he was effectively discharged in December, 1950 (when proceedings in accordance with the county charter were instituted), because of his

[4] In Field, Civil Service Law (1939), p. 195, the rule is stated to be that "Removal proceedings are not criminal proceedings, and removal from a position is not normally a criminal penalty. For this reason it is perfectly possible that conviction in a criminal court may not conclude the question of whether the convicted [civil service] employee should be removed from his position. The law generally recognizes this difference . . ." The quoted statement is obviously consistent with the conclusion that plaintiff should not be held to have been discharged, i.e., to have suffered termination of tenure of office, automatically upon his felony conviction.

asserted failure to reasonably pursue his remedy as provided by the charter. Plaintiff was notified that as of December 16, 1950, he had been discharged for the stated reason that he had failed "to immediately tell the truth to [his] superior officers . . . in a matter of . . . a serious nature." This charge, it should be noted, was completely distinct from the charge against plaintiff in the felony trial. The letter informing plaintiff of this purported discharge also notified him of his right to file a written reply to the charges and to request a hearing before the civil service commission. Plaintiff timely filed his reply and request for a hearing, but none has ever been held. The commission now refuses plaintiff a hearing because of his assertedly "unreasonable" delay in presentation of his demand therefor.

Subdivision 13 of section 34 of the Los Angeles County Charter specifies that upon request of "the person to be discharged . . . the Commission shall hold a hearing."[5] Since no hearing was held after a proper request by plaintiff, the proceedings which were begun against him could not have resulted in effecting a discharge not otherwise accomplished or in validating his purported discharge unless plaintiff could be held to have waived his hearing rights.[6] Defendants argue that such waiver occurred here because, for more than a year after the District Court of Appeal affirmed the order denying plaintiff's motion for a new trial, he failed to request that his case be put back on the commission's calendar, although he had specifically promised to notify the commission immediately after the appellate court decision.

However, plaintiff had been notified by the Los An-

---

[5]Prior to 1939, subdivision 13 of section 34 did not provide for a hearing on charges filed with the commission, and the cases uniformly held that a deputy could be discharged by his principal merely by informing the deputy of the charges and filing them with the commission. (*Cronin* v. *Civil Service Com.* (1925), 71 Cal.App. 633 [236 P. 339]; *Fee* v. *Fitts* (1930), 108 Cal.App. 551 [291 P. 889]; *Ey* v. *Fitts* (1931), 112 Cal.App. 109 [296 P. 327].) By amendment proposed by the county board of supervisors, ratified at a general election, and filed on March 7, 1939, subdivision 13 was changed to its present form (*ante*, p. 534-535). This history appears to be a convincing demonstration of the intent of the freeholders of Los Angeles County that its classified employes not be discharged without a hearing.

[6]In Field, Civil Service Law (1939), *supra*, p. 206, it is said that: "A hearing may be waived and laches run against the claim to it if the employee waits too long before requesting it. If no time limit is imposed, the request must be made seasonably; if one is specified, the request must be made within the limit provided. But the waiver must be expressed or implied; and the implication of waiver will not be made lightly."

geles County counsel that a hearing on his discharge could be held "at any time," and that the hearing in this case would not be set until the matter was brought to the commission's attention by *either* plaintiff or the sheriff. Moreover, when plaintiff first requested that the hearing be postponed, the commission wrote plaintiff that it had ordered the case off calendar "until notified by you of the disposition of the criminal case now pending in the Superior Court." The criminal case was not *finally* disposed of in the superior court until April 16, 1953, when the cause was dismissed and the charges expunged from the record on plaintiff's fulfillment of the probationary terms. Up to that time the cause was, for various purposes, still pending. For example, if before that time plaintiff had violated the terms of his probation the court could have revoked probation and entered a judgment of conviction. But plaintiff did not violate probation, no judgment of conviction was ever pronounced, and the criminal charges were dismissed. Plaintiff's request to restore the civil dismissal proceeding to the commission's calendar was made about one month after dismissal of the criminal case. Plaintiff had earlier waived any claim for salary from the date of his purported discharge by the sheriff to the date of the hearing before the commission and the delay was not to plaintiff's advantage or the county's detriment in this regard.

Furthermore, the duty of going forward with a removal proceeding before the commission is not generally on the employe. As this court stated in *Steen v. City of Los Angeles* (1948), 31 Cal.2d 542, 545 [190 P.2d 937], the commission "does not lose jurisdiction over a discharge proceeding merely by lapse of time. The most that can be said is that a hearing must be held within a reasonable time; that the appointing power, the initiator of the discharge proceeding, must diligently prosecute that proceeding." There is nothing in the record here which indicates that plaintiff acted in bad faith or to the prejudice of the sheriff or commission in not making his request for restoration of the case to the calendar sooner. Under the circumstances, plaintiff has not waived his right to a hearing, and his discharge has never been effectuated.

Plaintiff next urges that since the commission has neglected for more than five years to bring the charges to hearing, then by analogy to section 583[7] of the Code of Civil Procedure

---

[7]Section 583: "Any action heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced or to which it may be transferred on motion of the defendant, after due

the discharge proceeding must be dismissed for want of prosecution.

In *Prudential Ins. Co.* v. *Superior Court* (1931), 117 Cal. App. 528, 529-530 [1-3] [4 P.2d 294], it was held that "The provision of section 583 . . . as to dismissal of actions not brought to trial within five years . . . is mandatory where no stipulation in writing to extend the time has been made, and mandamus is a proper proceeding to compel a dismissal. [Citation.] . . . A stipulation that a case be dropped from the calendar to be reset upon notice is not within the statute. [Citation.] After the case was dropped from the calendar according to the stipulation, it was still the duty of the plaintiff to see that the case was brought to trial. [Citations.] Where the express mandatory conditions for a dismissal are clearly established and, as here, without contradiction, the court is without discretion in the matter. [Citations.]" (See also *Emerson* v. *Superior Court* (1936), 7 Cal.2d 685, 687 [2] [62 P.2d 363].) Plaintiff argues that the above quoted language is applicable here and that despite the fact that the matter was ordered off calendar at plaintiff's request, it is mandatory that the charges against him be dismissed.

 The language of section 583 refers to actions commenced before a court, and does not specifically relate to proceedings instituted before an administrative body. Since there are no mandatory dismissal provisions applicable in this case, the dismissal can only be granted in the discretion of the court. As declared in *Steen* v. *City of Los Angeles* (1948), *supra,* 31 Cal.2d 542, 546-547 [3] : "If we consider the matter of delay in a hearing by the board as analogous to laxity in the prosecution of a civil action— in bringing it to trial, it appears that courts have inherent power independent of statutory provisions to dismiss an action on motion of the defendant where it is not diligently prosecuted. [Citations.] The policy to expedite justice underlying the rule, exists where the proceeding is before a local administrative agency exercising quasi judicial functions such as the board [Board of Civil Service Commissioners of the City of Los Angeles] in the instant case. By analogy a proceeding before such a board should be dismissed where an unreasonable

notice to plaintiff or by the court upon its own motion, unless such action is brought to trial within five years after the plaintiff has filed his action, except where the parties have filed a stipulation in writing that the time may be extended and except where it be shown that the defendant has been absent from the State or concealed therein . . ."

time has elapsed—where the proceeding is not diligently prosecuted.''

As to whether the delay here has been unreasonable as a matter of law it is to be noted that much of the deferment was occasioned by plaintiff's request that the matter go off calendar. The remainder of the delay may be assumed to have been due to the good faith belief of the commission, acting on the advice of the county counsel, that plaintiff had waived his right to a hearing. Under the circumstances we conclude that the commission has not as a matter of law lost ''its jurisdiction to proceed in accordance with the provisions of the charter by delay in the conduct of a hearing.'' (*Steen* v. *City of Los Angeles* (1948), *supra,* 31 Cal.2d 542, 546 [2].) Accordingly, plaintiff's request that the court on the present record order that the proceedings before the commission be dismissed should be denied, and the commission should be directed to hold a hearing on, and in the light of the showing then made and the law as stated in this opinion dispose of, the charges still pending against plaintiff.

Defendants contend that in any event plaintiff's right to compel the commission to hold a hearing is barred by the statute of limitations, that this is an action to enforce a right given by statute, that such an action must be commenced within three years after the right accrues (Code Civ. Proc., § 338), and that the statutory requirement was not complied with. But even assuming that the three year statute is applicable to a proceeding of this nature, it does not appear that plaintiff's action is barred. Plaintiff could not properly commence an action against the commission to compel them to hold a hearing until the commission had refused his demand to hold one. We may assume for the purposes of this litigation that plaintiff could not postpone commencement of the statutory period by unreasonable neglect to make demand, and that the statute would begin to run even without a demand in such a case. (See *Dillon* v. *Board of Pension Commrs.* (1941), 18 Cal.2d 427, 430 [4] [116 P.2d 37, 136 A.L.R. 800].) But as indicated hereinabove, plaintiff's request for a hearing on May 19, 1953, was made within a reasonable time after the proceeding was originally commenced, and his right to a hearing had not been lost by that time. The present proceeding was filed on April 26, 1956, less than three years after plaintiff's timely demand, and therefore is not barred.

Plaintiff also asks that the writ require the proper authorities to receive from him an amount of money calculated

to make him fully paid up in the retirement system, and thereupon to retire him with the pension to which he would be entitled under such calculation. We have concluded that such judicial action at this time would be premature, and therefore that this request should be denied without prejudice. It is conceivable that there may be factors bearing on plaintiff's retirement and pension rights other than the validity or time of his purported discharge, and such matters, if any, which are not necessarily contained in the record now before this court, should be passed upon initially by the retirement board.

As discussed above, the civil service commission must hold a hearing on the question of whether the grounds specified in the letter to plaintiff of December 19, 1950, justify his discharge. We should not at this time endeavor to anticipate either what order the commission may make on the record as then developed in the light of this opinion or what action the Retirement Board of the Los Angeles County Retirement System may then or thereafter take. It is sufficient to note that on the present record (inasmuch as the attempted discharge of plaintiff has not yet been accomplished and as hereinafter developed cannot in any event be accomplished until he has been accorded a hearing by the civil service commission and "the procedure set forth in Section 34, Subdivision 13 of the Charter shall . . . [have been] followed in its entirety" (Los Angeles County Administrative Code, § 45), and as plaintiff has attained the age of more than 55 years) no tenable basis appears for denying plaintiff's application.

In *Steen* v. *Board of Civil Service Commrs.* (1945), 26 Cal.2d 716 [160 P.2d 816], a Los Angeles city employe in the classified service was served with a "Notice of Removal, Discharge or Suspension" on August 17, 1943. This notice was signed by an official of the employing agency, and advised the employe that he was discharged as of the date of the notice for the causes set forth therein. At that time the pertinent portions of the Los Angeles City Charter provided as follows: "Any board . . . having the power of appointment . . . shall have the power to remove, discharge or suspend any . . . employee of such department; but no person in the classified civil service of the city, . . . shall be removed, discharged or suspended except for cause, which shall be stated in writing by the board . . . and filed with the Board of Civil Service Commissioners. . . . *Upon such filing such removal, discharge or suspension shall take effect.* Within fifteen days

after such statement shall have been filed, the said board, upon its own motion, may, or upon written application of the person so removed, discharged or suspended, . . . shall proceed to investigate the grounds for such removal, discharge or suspension. If after such investigation said board finds . . . that the grounds stated for such removal, discharge or suspension were insufficient or were not sustained . . . said board shall order said person so removed, discharged or suspended to be reinstated or restored to duty." (Charter of the City of Los Angeles (1937), § 112, subd. (a); italics added.)

"Whenever it is claimed by any person that he has been unlawfully . . . discharged, . . . any claim for compensation must be made and a demand for reinstatement must be presented in writing within ninety days following the date on which it is claimed that such person was first illegally, wrongfully or invalidly . . . discharged." (Charter of the City of Los Angeles (1937), § 112½.)

The employe timely requested the board of civil service commissioners to investigate the grounds of his discharge, pursuant to subdivision (a) of section 112. A purported hearing was held by the board on December 14, 1943, and on the next day the board issued its order sustaining the discharge. Thereafter, on February 25, 1944, the employe filed a written demand for reinstatement. The question arose whether the 90 day period specified in section 112½ of the charter for filing such a demand commenced on the date when the employing agency filed the notice of discharge with the board or on the date when the board sustained the discharge.

This court construed the italicized portion of subdivision (a) of section 112 to mean only that as of the time the notice of discharge was filed with the board "the employee shall be required to cease working in his position and that the department need not accept his services pending the ultimate disposition of the matter," but that the discharge did not become final on that date. (*Steen* v. *Board of Civil Service Commrs.* (1945), *supra*, 26 Cal.2d 716, 720.) It was further held that an employe's discharge did not become final, where no investigation was requested, until the time for requesting an investigation had expired, or, where an investigation was requested, until the board after a hearing had sustained the discharge. Thus the period within which to demand reinstatement did not begin to run until one of those latter dates.

The present case presents an analogous situation. Plaintiff was notified by his employing agency that he had

been discharged as of a certain date for specified reasons. He timely requested a hearing by the civil service commission on the charges against him. Until such a hearing was held or waived the discharge could not become final. This would be true, under the Steen case, even if the applicable charter provision specified that the discharge would take effect upon the filing of the notice of discharge with the commission and thereafter referred to the employe as "the person so . . . discharged," who, on a showing of insufficiency of the stated grounds for discharge could be "reinstated." The case here is even stronger, for the applicable charter provision (subd. 13 of § 34) states that after the reasons for discharge are filed with the commission the "person *to be* discharged" (italics added) may request a hearing, and that if the specified reasons are found insufficient the employing agency is to be notified and such notification "shall be a bar to any discharge." The quoted language indicates the intent that the discharge of a Los Angeles County civil service employe shall not be effective until after a hearing (where properly requested) is held. This conclusion finds further support in *English* v. *City of Long Beach* (1952), 114 Cal.App.2d 311, 319-323 [250 P.2d 298]; see also *Tucker* v. *City of Boston* (1916), 223 Mass. 478 [112 N.E. 90, 91], holding that "When the statute provides that 'the person sought to be removed . . . shall be entitled to a hearing,' it is apparent that he cannot be removed unless and until he has had an opportunity to be heard, and that the right to such hearing is a condition precedent to such removal."

 Thus even if the commission here after holding its hearing sustains plaintiff's discharge, such discharge will not be effective before the date of the sustaining order. In the absence of a valid charter provision enacted prior to eligibility for retirement which provides for forfeiture, once a person who has undertaken public employment under an authorized public employes' retirement plan becomes eligible for retirement, his right to a pension cannot be destroyed merely because he is subsequently removed from office for his own misconduct. (*Skaggs* v. *City of Los Angeles* (1954), 43 Cal.2d 497 [275 P.2d 9].) It is statutory law that "No conviction of any person for a crime works any forfeiture of any property, except in cases in which a forfeiture is expressly imposed by law . . ." (Pen. Code, § 2604.) Furthermore, inasmuch as no judgment of conviction or "sentence of im-

prisonment in a State prison'' was ever entered against plaintiff, his civil rights have been at no time suspended. (Pen. Code, § 2600.) Therefore, any retirement rights which had accrued to plaintiff prior to the effective date of his discharge, in the event that such discharge may be hereafter accomplished, would not be affected by such discharge.

For the reasons hereinabove specified, the judgment is reversed and the superior court is directed to issue its writ of mandate which shall include the following relief:

1. It shall command the Los Angeles County Civil Service Commission (a) to vacate its order denying plaintiff's request for a hearing on the charges pending against plaintiff (b) to hold a hearing on such charges and dispose of the issues before it, not inconsistently with the law as enunciated in this opinion;

2. It shall command the Retirement Board of the Los Angeles County Retirement System to vacate its order denying the application of plaintiff for retirement, and to hear and dispose of such application, or of a supplemental or new application, in the light of the evidence which may then be presented, and not inconsistently with the law as stated in this opinion.

The petition for the writ may be in all other respects denied without prejudice.

Gibson, C. J., Shenk J., Carter J., and Traynor, J., concurred.

Respondents' petition for a rehearing was denied January 28, 1958.