[No. C005845. Third Dist. July 27, 1990.]

COUNTY OF SACRAMENTO et al., Petitioners, v.
FAIR POLITICAL PRACTICES COMMISSION et al., Respondents.

688

COUNSEL

L.B. Elam, County Counsel, and John F. Whisenhunt, Deputy County Counsel, for Petitioners.

Diane M. Griffiths, Kathryn E. Donovan, Scott Hallabrin, Lilly Spitz, Margaret Ellison, John H. Larson, Gregory W. Baugher, John K. Van de Kamp, Attorney General, Richard M. Frank, Floyd D. Shimoura, and Marsha Ann Bedwell, Deputy Attorneys General, for Respondents.

OPINION

PUGLIA, P. J.—Section 15-B of the Sacramento County Charter (section 15-B) was enacted by the county electorate at the November 1986 General Election. It provides for partial public financing of contests for county elective offices for those candidates who agree to certain limits on campaign expenditures. In implementation of section 15-B, the board of supervisors adopted Ordinance No. SCC-672, which added chapter 2.115 to the Sacramento County Code. Chapter 2.115 provides for partial public financing of supervisorial election contests for candidates who accept certain limits on campaign expenditures. (References hereafter to section 15-B include chapter 2.115.)

Proposition 73 was enacted by the state electorate at the June 1988 General Election. It amends the Political Reform Act of 1974. (Gov. Code, § 81000 et seq.) A provision of Proposition 73 adds section 85300 to the Government Code. Government Code section 85300 provides that "[n]o public officer shall expend and no candidate shall accept any public moneys for the purpose of seeking elective office."

The petitioners in this original proceeding are the County of Sacramento, three members of its board of supervisors and the county auditor (hereafter collectively, County). County seeks a writ of mandate ordering respondents to refrain from enforcing Government Code section 85300 so as to prohibit County from implementing section 15-B by providing partial financing of supervisorial election contests. Respondents are the Fair Political Practices Commission (FPPC), which has primary responsibility for implementing the Political Reform Act, certain of its officers, the Attorney General and the Sacramento County District Attorney.

The parties agree that section 15-B, authorizing the use of public funds partially to finance county supervisorial election contests, cannot be reconciled with Government Code section 85300, prohibiting a public officer from expending or a candidate from accepting public moneys for the purpose of seeking elective office, and that one of the two provisions must give way. The parties dispute (1) whether County has the authority to regulate in the area of campaign financing and (2) whether the regulation of campaign financing is a matter of statewide concern. We shall conclude the matter of campaign financing is a matter of statewide concern beyond the proper purview of County to regulate. Accordingly, we shall deny the writ.

Sacramento County is a charter county. (Stats. 1933, ch. 72, pp. 3088-3121.) Article XI, section 4 of the Constitution specifies the matters con-

cerning which county charters shall provide.[1]  ▉  Charter counties have only such legislative authority as has been expressly conferred by the Constitution and laws of the state. If these sources are silent as to the delegation of authority, the authority remains with the Legislature. (*Younger v. Board of Supervisors* (1979) 93 Cal.App.3d 864, 870 [155 Cal.Rptr. 921].) Matters expressly placed within the scope of a charter county's authority by article XI, section 4, include, inter alia, the composition of the governing body and the compensation, terms and removal of its members and other county officers. Article XI, section 4, does not expressly authorize a county charter to provide for the conduct of elections. In significant contrast, the cognate constitutional provision relating to city charter provisions (Cal. Const., art. XI, § 5) does specifically so provide.

▉  Although we have serious doubt that authority over financing of election campaigns for county officers is within the scope of the powers conferred upon charter counties (see, e.g., *Younger v. Board, supra,* 93 Cal.App.3d at pp. 871-873), it is unnecessary to develop that issue more completely, because it is self-evident that campaign financing of election contests, both state and local, is a matter of statewide concern and thus beyond the proper purview of county regulation.

The home rule provisions of the California Constitution provide for a measure of independent authority for charter counties and cities. (Cal. Const., art. XI, §§ 3, 4, 5.)  ▉  With respect to those matters for which

---

[1] Article XI, section 4 of the California Constitution provides: "County charters shall provide for: [¶] (a) A governing body of 5 or more members, elected (1) by district or, (2) at large, or (3) at large, with a requirement that they reside in a district. Charter counties are subject to statutes that relate to apportioning population of governing body districts. [¶] (b) The compensation, terms, and removal of members of the governing body. If a county charter provides for the Legislature to prescribe the salary of the governing body, such compensation shall be prescribed by the governing body by ordinance. [¶] (c) An elected sheriff, an elected district attorney, an elected assessor, other officers, their election or appointment, compensation, terms and removal. [¶] (d) The performance of functions required by statute. [¶] (e) The powers and duties of governing bodies and all other county officers, and for consolidation and segregation of county officers, and for the manner of filling all vacancies occurring therein. [¶] (f) The fixing and regulation by governing bodies, by ordinance, of the appointment and number of assistants, deputies, clerks, attaches, and other persons to be employed, and for the prescribing and regulating by such bodies of the powers, duties, qualifications, and compensation of such persons, the times at which, and terms for which they shall be appointed, and the manner of their appointment and removal. [¶] (g) Whenever any county has framed and adopted a charter, and the same shall have been approved by the Legislature as herein provided, the general laws adopted by the Legislature in pursuance of Section 1(b) of this article, shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter, and for which provision is made therein, except as herein otherwise expressly provided. [¶] (h) Charter counties shall have all the powers that are provided by this Constitution or by statute for counties."

counties and cities are competent to provide in their charters, the general laws of the state are superseded. (See *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 136-138 [185 Cal.Rptr. 232, 649 p.2d 874]; *Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535, 539 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036].) But the power of charter counties and cities to make regulations which supersede general law is not without limitation. "It has long been settled that, insofar as a charter city legislates with regard to municipal affairs, its charter prevails over general state law. (E.g., *Ex Parte Braun* (1903) 141 Cal. 204, 209 [74 P. 780]; *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 291 [32 Cal.Rptr. 830, 384 P.2d 158].) However, as to matters of statewide concern, charter cities remain subject to state law. (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137].) Similar rules apply to charter counties. (E.g., *Pearson* v. *County of Los Angeles* (1957) 49 Cal.2d 523, 535 [319 P.2d 624].)" (*Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 315-316 [152 Cal.Rptr. 903, 591 P.2d 1].) Thus, the general law prevails over local enactments of a charter county even with regard to matters which would otherwise be deemed strictly local affairs where the subject matter of the general law is one of statewide concern. (*Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 292 [32 Cal.Rptr. 830, 384 P.2d 158].) This is true regardless of the provisions of the county's charter, "if it is the intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation . . . ." (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137].)

██ County argues its right to control matters relating to administration of government is meaningless unless that right includes the power to control the election process, the integrity of which is dependent upon the regulation of campaign financing. While there may be a special concern on the part of County with regard to the integrity of its supervisorial election campaigns, the issue of campaign financing is not an exclusively local concern. The evils involved in campaign financing are not unique to Sacramento County nor to any particular election contest. The escalation of campaign contributions and expenditures is a phenomenon affecting local, statewide and national elections. Special interest money plays a negative role in elections at all levels of government. (See, e.g., *Buckley* v. *Valeo* (1976) 424 U.S. 1, 78-96 [46 L.Ed.2d 659, 721-732, 96 S.Ct. 612].)

In point of fact, the integrity of election contests is a long-standing matter of statewide interest. The Political Reform Act (Act), approved by initiative in 1974, reflects statewide concern that both local and state government officials serve the public interest and that election of such officials be free

from corruption or undue influence caused by financial interests. The Act is designed to provide California voters a greater degree of governmental supervision of the political process and to correct election abuses in California. (Gov. Code; §§ 81001, 81002; *Thirteen Committee* v. *Weinreb* (1985) 168 Cal.App.3d 528, 532 [214 Cal.Rptr. 297]; see Diamond et al., *California's Political Reform Act: Greater Access to the Initiative Process* (1975) 7 Sw.U.L.Rev. 453, 463-464.) Among the legislative findings contained in the Act are the following:

"*State and local government* should serve the needs and respond to the wishes of all citizens equally, without regard to their wealth;

"Public officials [including local officials (Gov. Code, § 82048)], whether elected or appointed, should perform their duties in an impartial manner, *free from bias caused* by their own financial interests or *the financial interests of persons who have supported them*;

"Costs of conducting election campaigns have greatly increased in recent years, and candidates have been forced to finance their campaigns by seeking large contributions from lobbyists and organizations who thereby gain disproportionate influence over governmental decisions; . . ." (Italics added; Gov. Code, § 81001, subds. (a) - (c).)

The Act appears in title 9 of the Government Code. Proposition 73 adds a chapter 5 to title 9. The provisions of article 3 of chapter 5 further manifest the state's long-standing concern over election and campaign reform. Article 3 mandates specific limitations on campaign contributions (Gov. Code, § 85300 et seq.) and prohibits the use of public funds for the purpose of financing political campaigns (Gov. Code, § 85300).

By its terms Proposition 73 applies to local and statewide elections alike and to all sources of contributions. It is part of a comprehensive scheme of political reform designed to regulate and proscribe a broad variety of activities by candidates, elected and appointed officials, and others. Proposition 73 is intended to establish a single statewide body of law pertaining to the financing of election campaigns.

We cannot agree with County's assertion that ballot materials accompanying Proposition 73 do not directly discuss the issue of public campaign financing by local governments. The analysis by the Legislative Analyst in the official voter information pamphlet points out the possible impact of the measure on local governments: "In summary, this measure: . . . [¶] Establishes limits on campaign contributions *for all candidates for state and local*

*elective offices*; . . . [¶] *Prohibits the use of public funds for these campaign expenditures*; and [¶] Prohibits state and local elected officials from spending public funds on newsletters and mass mailings." (Italics added.) The Legislative Analyst also points out that local entities which permit public financing of election campaigns would be affected by Proposition 73: "California law does not generally permit any public money to be spent for campaign activities. A few local government agencies, however, have authorized the payment of public matching funds to candidates for certain local elected offices."

Likewise, the official title of Proposition 73—"Campaign Funding. Contribution Limits. Prohibition of Public Funding. Initiative Statue."—clearly indicates that adoption of the measure would prohibit public funding of political campaigns.

The argument in favor of Proposition 73 in the official voter information pamphlet states: "Proposition 73 will reform the way political campaigns are financed in California WITHOUT GIVING YOUR TAX MONEY TO POLITICIANS! [¶] Proposition 73 is the ONLY CAMPAIGN FINANCE PROPOSAL THAT APPLIES TO ALL CALIFORNIA ELECTED OFFICES including State Senate, State Assembly, statewide constitutional offices and local offices." ■ ■ ■ ■ (Emphasis in original.)[2] Finally, the "public moneys" which by Government Code section 85300 are excluded as a source of campaign financing expressly include all moneys belonging to local government. (Gov. Code, § 85102, subd. (e); Pen. Code, § 426.)

■ We conclude the express language of Government Code section 85300 as well as its legislative history manifest a statewide concern with campaign financing which perforce prevails over conflicting local provisions.[3] (Cf. *Pearson* v. *County of Los Angeles* (1957) 49 Cal.2d 523, 529-530, 535 [319 P.2d 624].)

The necessary implication of County's position is that, in addition to the issue of campaign financing, other provisions of the Act in conflict with

---

[2] Initiative ballot arguments are considered the equivalent of the legislative history of a legislative enactment. (*Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 267, fn. 7 [186 Cal.Rptr. 30, 651 P.2d 274].)

[3] The overriding state interest in the area of campaign finance reform is evidenced by the fact two campaign finance reform initiatives, Proposition 73 (which prohibits the use of public funds in any election campaign) and Proposition 68 (which would have authorized the public funding of campaigns for the state legislature), were presented to the voters at the June 1988 General Election. Although both initiative measures were approved by the voters, Proposition 73 received a greater number of affirmative votes and thus the provisions in that measure prevail over conflicting provisions contained in Proposition 68. (Cal. Const., art. II, § 10, subd. (b); see *California Common Cause* v. *Fair Political Practices Com.* (1990) 221 Cal.App.3d 647, 650 [269 Cal.Rptr. 873].)

local law could be ignored by charter counties. For example Government Code section 87100 et seq., prohibits a state or local public official from making, participating in or influencing a governmental decision in which the official has a financial interest. We have no hesitation in stating County could not exempt itself from that provision and we discern no valid distinction in County's present attempt to exempt itself from the campaign financing provisions.

Finally, we reject County's argument the state may not impose its will on the people of Sacramento County when in 1986 the voters of the County "overwhelmingly" supported the public financing of local supervisorial campaigns by a 61 percent margin. Suffice it to say Sacramento County voters, when given the opportunity two years later of completely banning the public financing of any election campaign in the state, approved Proposition 73 by a 67 percent margin.

The subject of election campaign financing, and specifically the public funding of election campaigns, is a matter of statewide concern. Consequently, state law prevails over conflicting provisions of the Sacramento County charter and related ordinances.

The petition is denied. The alternative writ, having served its purpose, is discharged.

Carr, J., and DeCristoforo, J., concurred.