TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 94-316 |
| of | : | |
| | : | July 20, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE HONORABLE GRAY DAVIS, STATE CONTROLLER, and the BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM have requested an opinion on the following question:

Does the Board of Administration of the Public Employees' Retirement System have the authority to refuse to pay the monthly allowance otherwise payable to a retiree of the Legislators' Retirement System who has been convicted of felony political corruption charges arising out of his official duties and who has fled the court's jurisdiction to avoid sentencing?

CONCLUSION

The Board of Administration of the Public Employees' Retirement System does not have the authority to refuse to pay the monthly allowance otherwise payable to a retiree of the Legislators' Retirement System who has been convicted of felony political corruption charges arising out of his official duties and who has fled the court's jurisdiction to avoid sentencing.

ANALYSIS

Paul Carpenter was a member of the Legislators' Retirement System by virtue of his service as a state assemblyman, a state senator, and a member of the State Board of Equalization.[1] He commenced his state service in 1974 and retired in 1990. He is currently receiving a retirement allowance from the Board of Administration of the Public Employees' Retirement System ("Board"). On December 1, 1993, he was convicted in federal court of felonies involving political corruption arising out of his official duties. He thereafter fled the court's jurisdiction to avoid sentencing and is currently in custody in Costa Rica awaiting possible extradition to the United States. The question

---

[1] A member of the State Board of Equalization may elect to become a member of the system. (See Gov. Code, §§ 9351.3, 9355.4.)

we are asked to address is whether the Board must continue to pay his retirement allowance under the described circumstances.  We conclude that it must continue to pay the allowance.

The Legislators' Retirement Law (Gov. Code, §§ 9350-9378)[2] is administered by the Board (§ 9353).  Our focus herein is on section 9355.16.  This statute provides:

"Any member of this system who is charged, by indictment, with the commission of any felony involving the accepting or giving, or offering to accept or give, any bribe, the embezzlement of public money, extortion, theft of public funds, perjury, or conspiracy to commit any of said crimes, arising directly out of his official duties, and who is fugitive a from justice, shall be suspended from membership in this system while such charge is pending and until final disposition of the charge.  At any time during the period of suspension of membership, the person so suspended shall be entitled to withdraw his accumulated contributions from the system, and such withdrawal shall constitute an election to terminate membership in the system.

"This section applies only to persons who are charged with the commission after the effective date of this section of a felony described in this section by an indictment filed after the effective date of this section."

Section 9355.16 was enacted in 1959 (Stats. 1969, ch. 2161, § 1) in response to an application for a retirement allowance filed by William Bonelli, a former member of the State Board of Equalization.  Bonelli had been indicted in 1954 for accepting bribes in exchange for aiding persons in obtaining liquor licenses and had fled to Mexico before being prosecuted.  In 1958 he applied for a retirement allowance as a member of the Legislators' Retirement System.  In 33 Ops.Cal.Atty.Gen. 23 (1959), we concluded that despite his status as a fugitive from justice, Bonelli was entitled to his retirement allowance, although the State Controller could offset any amounts owed by Bonelli to the state.

In *Bonelli* v. *State of California* (1977) 71 Cal.App.3d 459, Bonelli's widow sued the state for the recovery of the money the State Controller had offset.  The court ruled in her favor, stating:

"Section 9359.3 provides as follows:  `The right of a person to any benefit or other right under this chapter and the money in the Legislators' Retirement Fund are not subject to execution, garnishment, attachment, or any other process whatsoever,' and forbids insofar as here relevant, any assignment of such money.

"`It is well settled that retirement benefit rights -- including pensions whether for age and service, disability or death -- are vested [citations].' (*Dickey* v. *Retirement Board* (1976) 16 Cal.3d 745, 748.)  The strong public policy opposing interference with such vested pension rights, even in the face of official wrongdoing, was reaffirmed by the California Supreme Court in *Willens* v. *Commission on Judicial Qualifications* (1973) 10 Cal.3d 451.  In *Willens*, a disabled judge who was removed from office for official misconduct involving bribery and criminal conspiracy was held entitled to receive disability retirement benefits.  The court stated:  `Since pension rights of this nature may be considered "vested" rights

---

[2]All section references are to the Government Code unless otherwise indicated.

(*Pearson* v. *County of Los Angeles* 49 Cal.2d 523, 543; *Allen* v. *City of Long Beach* 45 Cal.2d 128, 131; *Wallace* v. *City of Fresno*, *supra*, 42 Cal.2d 180, 183), the following rule would appear to govern: "In the absence of a valid . . . provision enacted prior to eligibility for retirement which provides for forfeiture, once a person who has undertaken public employment . . . becomes eligible for retirement, his right to a pension cannot be destroyed merely because he is subsequently removed from office for his own misconduct. [Citation.] It is statutory law that `No conviction of any person for a crime works any forfeiture of any property, except in cases in which a forfeiture is expressly imposed by law . . . .' (Pen. Code, § 2604.)" (*Pearson* v. *County of Los Angeles*, *supra*, at p. 543.)' (10 Cal.3d at pp. 458-459.)

"In an opinion dealing with the Legislators' Retirement Law, the Attorney General, citing *Willens*, and after an analysis of *Pearson* and its antecedents, concluded that the perjury conviction of a former Lieutenant Governor `would have no effect upon the Lieutenant Governor's retirement benefits' (57 Ops.Cal.Atty.Gen. 374, 375, 386-387), except in the event the Lieutenant Governor became a fugitive from justice (§ 9355.16, discussed *infra*).

"The *Pearson* rule appears to rest on two bases. First, the requirement that liberal construction be given pension legislation to the end that the beneficent results thereof may be achieved. (*Gorman* v. *Cranston* (1966) 64 Cal.2d 441; see also *Jorgensen* v. *Cranston* (1962) 211 Cal.App.2d 292, 296.) Among those results are the protection of the employee and his family from economic insecurity. (*Willens* v. *Commission on Judicial Qualifications*, *supra*, 10 Cal.3d at p. 456.) The second basis is the statutory prohibition against forfeiture of property for conviction of crime except where forfeiture is expressly authorized by the Legislature. (Pen. Code, § 2604.) Pension benefits have been upheld in the face both of indictment for and conviction of crimes involving official misconduct. (See, in addition to *Willens* and *Pearson, supra, Skaggs* v. *City of Los Angeles* (1954) 43 Cal.2d 497; cf. *MacIntyre* v. *Retirement Board of S.F.* (1941) 42 Cal.App.2d 734.)

"Our conclusion in support of the Bonellis on the issue of pension benefits is buttressed somewhat by the enactment, in 1959, of section 9355.16. That section reflects clearly the Legislature's intent to avoid forfeiture of accumulated contributions by providing for suspension of membership in the system during the pendency of a criminal charge, and by permitting withdrawal of those contributions during the period of suspension. (See also, § 9355.2.) Inasmuch as the facts at bench arose prior to the adoption of section 9355.16, its provisions are expressly inapplicable to the Bonellis." (*Id.*, at pp. 466-468; fns. omitted.)

It is evident from the discussion of the applicable law in *Bonelli* that Paul Carpenter currently has a vested right to his retirement allowance unless it is divested under the terms of section 9355.16. Section 9355.16 was enacted before he began his legislative service, and accordingly it must be considered as part of his "retirement contract." We thus shall ascertain the application of section 9355.16 with respect to a retiree who, *after retirement*, becomes a fugitive from justice.

The rules to be applied in construing the terms of a statute are well settled. "[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562.) "In determining intent, we look first to the language of the statute, giving effect to its `plain meaning.'" (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209.) "Where reasonably possible, we avoid statutory constructions that render particular provisions

superfluous or unnecessary." (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 459.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Commission* (1987) 43 Cal.3d 1379, 1387.) "`[C]ourts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.'" (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097.)

Applying these rules, we find that section 9355.16 is not applicable to an individual who is already retired when he or she becomes a fugitive from justice. First, the terms of section 9355.16 govern "any member" of the retirement system who is a fugitive from justice; the statute does not refer to former members. Section 9355.1 sets forth four situations when membership in the system ceases:

"A person ceases to be a member of this system:

"(a) *Upon retirement pursuant to this chapter.*

"(b) Upon death.

"(c) Except as provided in Section 9355.2 or while absent on military service, on the thirty-first day after he ceases to be a legislator.

"(d) Upon resignation from membership in this system." (Emphasis added.)

Accordingly, based upon the language of section 9355.1, Paul Carpenter was not a member of the Legislators' Retirement System when he fled the court's jurisdiction in 1993, since he ceased to be a member when he retired in 1990.

Examining the second sentence of section 9355.16, we find that it contains an option applicable to all fugitives from justice who fall within the purview of the statute. Such option is to terminate membership in the system while suspended by withdrawing all accumulated contributions. Again, the clear implication is that section 9355.16 is inapplicable to an individual who is already retired. This sentence, as does the first sentence of the statute, (1) presupposes that the individual is still a "member" of the system and (2) provides an option which would not be available to an individual who is already retired, the withdrawal of contributions. (See §§ 9359-9361.5.) In short, the plain wording of section 9335.16 demonstrates that it does not apply to Paul Carpenter, or any other retiree, who *subsequently* becomes a fugitive from justice.

Insofar as it is urged that a fugitive from justice should not be paid a state retirement allowance, we believe that the language found in *McCarthy* v. *City of Oakland* (1943) 60 Cal.App.2d 546 is dispositive. In response to the contention that it would be contrary to public policy for a convicted felon to receive her deceased husband's pension payments, the court stated:

"Public policy is sometimes declared by judicial decision, but where a legislative body having jurisdiction over pension rights has enacted specific provisions on the subject, the public policy on that subject is established thereby. Even in such a case as the present, if the controlling rule operates unjustly the remedy lies with such legislative authority. . . ." (*Id.*, at p. 549.)

With reference to fugitives from justice receiving benefits under provisions of the Legislators' Retirement System, the applicable public policy of the state is as set forth *and limited*

by section 9355.16. Only the retirement benefits of current "members" are affected by the statute; if the person is retired, payment of his retirement allowance must continue even though he thereafter becomes a fugitive from justice.

In answer to the question presented, therefore, we conclude that the Board has no authority to refuse to pay the monthly retirement allowance otherwise payable to a retiree of the Legislators' Retirement System who has been convicted of felony political corruption charges arising out of his official duties and who has fled the court's jurisdiction to avoid sentencing.

* * * * *